### GEORGE A. FULLER CO. v. UNITED STATES.

No. 44586.

Court of Claims.

Jan. 7, 1946.

766

Alexander M. Heron, of Washington, D. C. (Hinton & Heron, of Washington, D. C., on the brief), for plaintiff.

E. E. Ellison, of Washington, D. C., and John F. Sonnett, Acting Asst. Atty. Gen. (Currell Vance, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and JONES, Judges.

JONES, Judge.

The plaintiff constructed the building now occupied by the Department of Justice. It covers an entire block between Constitution and Pennsylvania Avenues, and between Ninth and Tenth Streets in Washington, D. C. It is a seven-story structure above the basement, with steel framework and faced with limestone, having a large central and four small courts. It has ornamental features in stone on both the exterior and interior of the building, and also some ornamental plasterwork on the interior.

The construction contract was dated June 29, 1932. The original consideration was $7,667,000, but due to some additions and change orders the final contract price was $7,794,000.51. Notice to proceed was received July 13, 1932. The work was to be completed in 720 days, thereby fixing July 3, 1934 as the required date of completion. On account of a number of change orders, additional work and strikes the time for completion was extended 210 days, making the final completion date April 15, 1935. The work was completed within the time as extended and no liquidated damages were assessed.

Models were required for the ornamental stone for both the exterior and the interior of the building. The models required for these ornamental features were shipped to the subcontractor who fabricated the stone and then shipped it to Washington. The fabrication of an ornamental stone after receipt of the models required from four to six weeks, according to the degree of ornamentation.

The ornamental features of the plasterwork were fabricated at the job site. This work required only three or four days after the receipt of the model.

Under the specifications the defendant was to furnish the models for all this ornamental work. They were furnished by the defendant through Anthony di Lorenzo of New York City under a direct contract dated September 22, 1932. There were 129 models for the stone and marble, and 138 for ornamental plastering.

There was considerable delay in the furnishing of these models. This delay interfered with the work and materially increased the costs of performance. The damages thus caused are the basis of this suit.

The defendant concedes that it breached the contract in delaying the furnishing of these models, but it contests the amount which plaintiff claims to have been damaged.

Plaintiff planned to construct the building in two sections. The south part of the building, facing Constitution Avenue, was to be constructed first. It was contemplated that each trade would start its performance in the south section and upon completion of its work in that section would then in turn move to the north section. In this manner a smaller number of workmen and a smaller amount of equipment would be required than if each trade worked simultaneously in all parts of the building.

The plaintiff expected to complete the exterior walls of the south portion of the building and have it under roof by March 1, 1933, thereby permitting the mechanical and other interior work to proceed at that time. It planned to proceed immediately thereafter with the interior stonework and the installation of partitions, which work it expected to complete within a period of eight months, or about November 1, 1933, for the entire building. It was planned to start the plastering work in the south portion of the building about April 1, 1933, and it was anticipated that about six months would be required for its completion. The plastering on the north side was to begin about June 1, 1933, and its completion would require a similar period.

In carrying out its building plans plaintiff proceeded to set stone until it reached a point about the fifth floor on the south section when absence of ornamental stone caused plaintiff to discontinue work on that section and begin on the north or Pennsylvania Avenue section where stone setting proceeded until the fifth floor was reached.

Plaintiff claims that from March 1, 1933, to July 1, 1933, the south section of the building was not enclosed, and that interior trades could not proceed in a normal fashion, causing serious delay to their

work. Plaintiff was delayed during this period through its inability to complete the enclosure of the building in the manner contemplated. However, it partially made up for this delay by proceeding to erect stone on the Pennsylvania Avenue section prior to the date it had intended to begin this part of the building. The work of certain mechanical trades, including the plumbing and heat installation proceeded as far as the interior stone construction would permit, but a considerable portion of this work was delayed in completion until the work could be protected by the enclosure of the building. Plaintiff offset some of this delay by doing some interior work that did not require weather protection, and by the use of temporary protection for other work requiring it.

There were numerous interruptions in carrying out the regular plan of the different types of the work due to delays in furnishing the models. Many of these delays ran concurrently. There was an overall delay of approximately three months due to the failure of the defendant to furnish the various models on time. The details of these various delays are set out in the findings and will not be repeated here. The delays were unreasonable. They handicapped the contractor and added materially to the costs of construction. The plaintiff deserves credit for minimizing the consequences of the delays by changing its plan of work and doing a considerable amount of it out of sequence. After allowing for these reductions in damages, plaintiff still claims damages in the total sum of $100,683.74 which it attributes to the failure of the defendant to furnish promptly the models so that the work might proceed in regular sequence.

■ The proof is not such as to enable us to make an accurate determination of the amount of excess costs of installation resulting from the delay in receiving ornamental stone, but we find from thorough consideration of the proof actually submitted, and after eliminating doubtful items, that the excess costs of installation resulting from delay in receiving the models for the ornamental stone were at least $20,000, and that this was attributable to the defendant.

Plaintiff had planned to install the ornamental work along with the plain plastering as the mechanics moved upward from floor to floor. Since all the models for ornamental plaster were not available, plaintiff proceeded to perform the plain plasterwork throughout the entire building, which was a very large area. As spaces were reached requiring the installation of ornamental work these areas were skipped over so that only a comparatively small portion of the ornamental work was performed along with the plain work. Very little ornamental plasterwork was performed prior to November, 1933.

Plaintiff had engaged a large crew of plasterers for all plasterwork intending to select from the crew the most skilled for the placing of the ornamental plaster, there being no separate class of mechanics for ornamental work. Upon completion of the plain plasterwork the crews were largely dispensed with, which necessitated the employment of small crews as the ornamental work became available, with the attendant difficulty of the selection of skilled men for this work, thus causing excessive labor turn-over.

Plaintiff enclosed many of the spaces for ornamental plaster with canvas and used salamanders for temporary heating, many portions of the building being unfinished. Working conditions in the heated spaces tended to lessen the efficiency of the workmen. Plaintiff experienced delays of approximately two months on the plaster operation attributable to the defendant. This delay was partially absorbed by extensions of time in 1934 in connection with subsequent change orders and on account of the carpenters' and plasterers' strikes.

An accurate determination of the exact amount of excess costs in connection with installing the ornamental plasterwork out of sequence cannot be made, but after eliminating doubtful items we find that this excess cost amounted to at least $25,000.

■ The plaintiff also sues for job overhead costs which it incurred on account of the delay in furnishing the models and the consequent delay in the performance of the contract. Certain items of actual expenditures, including membership fees and gratuities, as well as some of the attorneys' fees paid by the contractor are not properly chargeable as job overhead. These we have excluded. After eliminating the items not properly chargeable, plaintiff's actual job overhead was increased by the sum of $15,034.68 as a result of the delays occasioned by the defendant.

768

There are certain other minor items set out in finding 25 which consist of costs incurred by plaintiff as a result of its inability to pursue the work in proper sequence and delays occasioned thereby, due to defendant's failure to deliver stone and plaster models when required. These expenditures as a result of such delays total $2,367.09.

Plaintiff has made no claim for any general administrative expense and none has been allowed.

The plaintiff is entitled to recover $62,401.77. It is so ordered.

MADDEN, Judge, took no part in the decision of this case.