**J. J. KELLY CO. v. UNITED STATES.**

No. 46032.

Court of Claims.

Jan. 6, 1947.

Bernard J. Gallagher, of Washington, D. C., for plaintiff.

Grover C. Sherrod, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDIN, Judges.

JONES, Judge.

Plaintiff on November 2, 1942, contracted to construct for the defendant a decontamination building in the Navy Yard at Philadelphia, Pennsylvania.

Notice to proceed was given December 10, 1942, thus fixing February 8, 1943, as the date for completion of the work.

The work was completed May 1, 1943, except for some items which were taken over by the Government. This was 82 days later than the contract date for completion.

The contracting officer advised plaintiff in writing that the delay was due to unforeseeable causes beyond plaintiff's control and he, therefore, extended for a period of 82 days the time for the completion of the work. These causes as listed were—

1. Operation of the preference system which delayed the delivery of materials.

2. Unusually severe weather.

3. An act of the Government in failing to deliver promptly the necessary protector units.

The contract price, as modified by change orders, was paid to plaintiff, the last pay-

ment being made August 31, 1943. Prior thereto plaintiff had executed a document releasing the Government from all claims arising under the contract except "overhead" in the amount of $2,990.37.

The building which plaintiff was to construct was to be approximately 54 feet by 75 feet. It was to be used for the treatment of persons who had been subjected to gas attacks. Five protector units were to be installed. These were to be furnished by the government and were to be the heart of the decontamination building without which it could not function. These protector units were a military secret. Neither the plaintiff nor the officers who were in charge of the construction of the building knew the nature of them. However, it was revealed that the protector units were to be enclosed in rooms or placed within enclosures. Three kinds of connections were to lead to these enclosures including an electric, a duct, and an exhaust system. The plans did not reveal the location of the terminals of the duct and exhaust systems nor was plaintiff able to determine where these were to be located until after the protectors arrived. The location of the electric system was disclosed by the drawings.

None of the protector units arrived until long after the day which had been fixed for the completion of the building. Three of these five protector units were not furnished by the Government until 49 days after the time that had been set for the building to be finished. The two remaining units had not been furnished by May 1, 1943, on which date the defendant released the plaintiff from further work on the contract.

The plaintiff had further difficulties in securing materials due to the preference or priority system which was in effect during this war-time period. There were two bases for the delay in construction—one, the delay in furnishing the protector units, and two, the delay caused by the system of priorities in respect to materials. Both of these delays were serious, but, while plaintiff at first indicated that the major portion of the delay was due to the failure to promptly furnish the protector units which were to be installed, he later stated that the

delay was due to both causes and declined to state or estimate how much of the delay was attributable to the respective causes.

There is no doubt that plaintiff was compelled to incur additional expense and costs of construction because of these delays. There was a third interference—that of severe weather conditions which prevailed during a 20 day period. However, plaintiff, by employing additional help, was able to overcome this delay.

Unfortunately for plaintiff, the testimony does not show clearly what proportion of the delay was due to the system of priorities and what proportion was due to nondelivery of the protector units. These were generally concurrent and not distinct, and, since the evidence does not furnish any proper basis for determining the part of the delay due to each of these the court is unable to satisfactorily apportion the delay attributable to the respective causes.

■ The preference or the priority system was an essential wartime policy. It was an act of sovereignty which was applied on a national scale to essential materials and since the Government was acting in this capacity it is not liable to the contractor for any damages due to that system. Horowitz v. United States, 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736; J. F. Barbour & Sons v. United States, 63 F.Supp. 349, 104 Ct.Cl. 360.

■ Unquestionably there were 82 days' delay. None of this delay was the fault of the plaintiff. Yet, since a portion of it was due to conditions for which the defendant cannot be held liable and, since on the basis of the testimony and the documents in the record, we are unable to separate this portion and have no reasonable basis in the record for calculation of the portion that was due to each of the two causes of delay, the record does not afford a definite ground for recovery on the part of the plaintiff.

■ However, even if we were able to determine the amount of the delay that was due to the nondelivery of the protector units, the plaintiff could not recover in the light of the recent decision of the United States Supreme Court in the case of United States v. Howard P. Foley Co., 67 S.Ct. 154.

While, probably due to our own fault and limitations, we do not find ourselves completely in accord with the logic of that decision, yet, since under our system the Supreme Court is the final arbiter in these matters and has the authority to set the pattern, we accept and apply the principle laid down by that court. In fact, we are glad to have a final determination of this long-disputed question. Article 9 of the standard contract was involved in both cases in identical language.[1]

In a number of decisions this court has held that Article 9 of the standard contract undertakes only to fix the liquidated damages that are to be assessed against the contractor in the event such contractor refuses or fails to prosecute the work, and provides only for an extension of time in behalf of the plaintiff in the event the delay is due to no fault on his part, and that such article does not attempt to determine the amount of damages that may be due plaintiff in the event the delay is due to a fault or breach of contract on the part of the Government.

We have held that this article is limited to the situation where the contractor fails or refuses to prosecute the work with sufficient diligence to insure its completion within the time specified, in which event the Government is to have the choice of two alternatives, to wit, cancellation or the assessment of liquidated damages; and that the proviso simply limits the Government's choice of the two alternatives, and does not undertake to pass on the question of plaintiff's damages due to delay caused by wrongful acts of the government.

We are still convinced that this is the proper interpretation but, since the final decision is otherwise, there can be no recovery in this case even though the delays had been clearly established as the fault of the agency or representatives of the Government.

---

[1] Article 9. Delays—Damages.—If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the contractor's right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event it will be impossible to determine the actual damages for the delay and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications or accompanying papers and the contractor and his sureties shall be liable for the amount thereof: Provided, That the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes, if the contractor shall within 10 days from the beginning of any such delay (unless the contracting officer, with the approval of the head of the department or his duly authorized representative, shall grant a further period of time prior to the date of final settlement of the contract) notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for completing the work shall be final and conclusive on the parties hereto.

We respectfully suggest, however, in view of this final settlement as to the proper construction of Article 9 which is included in most of the current construction contracts, that those who represent the different agencies of the Government, if they are wise, should consider modifying the form of Article 9 in future contracts so as to make it clear that the contractor will be entitled to recover any damages that might be due to any affirmative wrongful act on the part of the representatives of the Government or any positive neglect on their part which may cause delay and additional costs to the contractor.

We are convinced from a reading of the history of the gradual working out of the present form of the standard contract by the Interdepartmental Board and from the record of discussion of the Board that it was not the intention to exclude the allowance of necessary costs due to wrongful delay. The proceedings of the Board and discussions on this point are set out in Special Findings No. 10 to No. 16, inclusive, in the case of Harwood-Nebel Construction Co. v. United States, 105 Ct.Cl. 116, 128.

To anyone at all familiar with the practical side of construction, it must be readily apparent that a mere extension of time within which to allow the contractor to complete the contract does not at all compensate him for losses which he may sustain by virtue of delays which are due to wrongful acts on the part of the Government.

While most of the contracts are carried out in good faith and in fairness, and this court gets only the troublesome ones, yet it is in the nature of things that those in charge of bureaus or departments sometimes obey the impulse to exercise their powers. They are not always fair and just. In such rare cases surely a remedy should be provided. When a contractor has scores of employees, who must be paid for semi or total idleness during a period of delay through no fault of his own, but which is due to the wrongful acts or omissions of the other party to the contract, and at the same time his bonds, his interest, his capital investment, his overhead, his employees' wages, and his rental or use of machinery must go on, there is brought home to him in a very real and sometimes in a bankrupting way the heartbreaking realization that no mere extension of time will compensate him for the additional outlay on these expensive items.

If, therefore, the article is allowed to remain in its present form, contractors in making their bids will necessarily make allowances for these possibilities and conditions which might result in delay through no fault of the contractor and which might greatly increase the cost of construction. As a matter of practical necessity their bids will be greater.

Therefore, retention of Article 9 in its present form in the government contracts would probably cost the Government more in the way of increased prices on such contracts hereinafter entered into than any possible savings that could be attained by retaining the article in its present form.

We offer this comment, not in a spirit of criticism, nor in any sense a complaint against the decision of the superior court. The article is not altogether clear and has frequently been the subject of dispute. There is a satisfaction in having a controversial issue finally settled.

The plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.

LITTLETON, Judge; and WHALEY, Chief Justice, concur.

WHITAKER, Judge, concurring.

I concur in the result reached by the court and for the reasons stated, except that part of the opinion which discusses the Supreme Court's opinion in the case of United States v. Howard P. Foley Co., supra. I do not understand that opinion to hold that the United States is not liable for wilfully or negligently delaying a contractor. It holds that the United States does not warrant to have ready the site of the work or to do whatever it is obligated to do in time for the contractor to finish the work within the contract time; but I do not construe it to absolve the United States from liability for wilful delays.

or those that could be avoided by the exercise of ordinary diligence.

MADDEN, Judge, concurs in the foregoing opinion by Judge WHITAKER.