**CHALENDER v. UNITED STATES.**

No. 49091.

United States Court of Claims.
March 2, 1954.

Clifford B. Kimberly, Kansas City, Mo., for plaintiff.

William A. Stern, II, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff[1] sues to recover an alleged loss sustained in the performance of a construction contract with the defendant. The petition is in two counts. Count I seeks recovery under the War Contracts Hardship Claims Act,[2] also known as the Lucas Act, and Count II is a claim for breach of contract.

Under this contract, which was a lump sum contract entered into with the U. S. Army Corps of Engineers in June 1943, plaintiff was to construct within a period of 61 days an addition or enlargement to the existing water treatment facilities at Camp Gruber, Oklahoma. Defendant was to furnish virtually all of the cast-iron pipe, specials, fittings and valves required in the work. Plaintiff claims that defendant's delay in furnishing certain of these materials delayed and interfered with the orderly progress of the work upon which plaintiff's bid was based, thereby causing the work to be done in disorderly sequence and requiring 71 days' additional time at an increased cost of $38,390.33.

## Count I

Upon the close of plaintiff's proof relative to Count I defendant moved pursuant to Rule 49 (b)[3] for a dismissal of that count on the grounds, *inter alia*, that plaintiff had never made a valid request for relief under the Lucas Act. The commissioner of this court made detailed findings of fact and filed a report recommending that defendant's motion be granted. On the basis of those findings (findings 2 to 7) and our review of the record, we accept the recommendation of the commissioner and dismiss plaintiff's claims under Count I of the petition on the ground that plaintiff had never filed with the appropriate dapartment a valid request for relief under the Lucas

Act. Throughout all negotiations, plaintiff believed and asserted that the Government, as of right, owed her the amounts claimed. Recovery under the Lucas Act requires that the written request for relief must be such as to apprise the Government that the claim being made was one for extra legal relief outside of any contractual obligation. Fogarty v. United States, 340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10; Lawrance Aeronautical Corp v. United States, Ct.Cl., 115 F.Supp. 903. Plaintiff has not met that requirement.

## Count II

Under Count II of the petition, plaintiff seeks recovery for breach of contract.

The enlargement of the water treatment facilities at Camp Gruber was authorized by the Chief of Engineers on May 14, 1943. The specifications were dated June 2, 1943, and plaintiff was advised of the acceptance of its bid by letter of June 16, 1943, accepted by plaintiff on June 17, 1943. The specifications required that work be commenced within one calendar day after receipt of notice of award and be completed on or before August 17, 1943. Since plaintiff accepted the award on June 17, it provided for 61 calendar days for completion of the work. The notice of award was the notice to proceed as well. The work as far as plaintiff was concerned was completed on October 27, 1943, which was a delay in completion of 71 days.

Plaintiff was paid $38,765.58 which consisted of the contract price of $35,210, changes amounting to $55.25 (finding 20), additional cement over that specified in the sum of $341.88 (finding 26) and $3,158.72 for additional work done in correcting leakage of existing structures. (Finding 30.) The total cost to plaintiff under the contract was $77,156.-

---

1. The Chalender Construction Company was operated by John W. Chalender, Jr., but because of the possibility of his being called into military service, and to avoid complications that might arise, this contract was executed and entered into by his wife, Fern E. Chalender, and this suit brought in her name.

2. 60 Stat. 902, as amended by 62 Stat. 869, 992, 41 U.S.C.A. § 106 note.

3. Now 49 (c) (3) under our present Rules, 28 U.S.C.A., which were adopted October 15, 1953.

18 (finding 33) which resulted in a loss of $38,390.33, representing the excess cost of performance by reason of delays in the delivery of materials. In addition to asking recovery of this amount, plaintiff also claimed $1,394.83 as representing additional costs entailed in performing alleged extra work. The facts as found by the commissioner of this court do not support these latter claims, and plaintiff has taken no exception to those findings. (Findings 31 and 35.) Therefore, the only loss with which we are now concerned is that which plaintiff alleges was caused by delays of defendant in the delivery of materials.

This contract called for the construction of a settling basin and filter house which were to be added to the already operating water purification system at the camp. Of the two structures, the filter house was the more complex, requiring three floors with installations for the purification of water, a gallery of cast-iron piping running through the floors and connections with adjacent filter structures. It is not disputed that the sole cause of the 71-day delay was the late delivery of materials needed in the construction of the filter house. The settling basin was substantially completed within the contract period. Practically all the material for the filter house was to be furnished by the defendant.

Plaintiff contends, and there is some evidence, that the failure of the Government to effect timely delivery of these materials was responsible for the entire 71-day delay. This, plaintiff alleges amounted to a breach of contract on the part of the defendant, making it liable for the full amount of the loss sustained.

Defendant while admitting that plaintiff sustained a loss of $38,390.33 asserts that, since no negligence on its part has been shown, it cannot be held liable for any part of the loss. Defendant argues that in any event it was responsible for only 14 or 15 days of the delay resulting from the late arrival of materials that it was required to supply, and it further contends that, even assuming liability on its part for causing a particular number of days of delay, plaintiff is still not entitled to recover because of the impossibility of apportioning the amount of the resulting loss between delays chargeable to the Government and those not chargeable to it. We have uniformly held that where the defendant causes delay we will not undertake to apportion the delay unless the evidence is clear.

In setting up this work, plaintiff planned a method of operation which was proper and reasonable, wherein the construction of both settling basin and filter house would proceed simultaneously making use of the same work crews. This method saved expense and was reasonable and proper. Plaintiff intended to alternate the different trades from one building to the other as the need required. Thus, most of the workers could be kept on the job continuously until their ultimate release. The construction of both structures simultaneously, with the workers being shifted from one to the other, was the only possible procedure which could be followed if all work was to be completed within the time required by the contract, and was obviously contemplated by the parties and by the contract. In order to follow this procedure it was necessary that the pipe and related items needed for the filter house, which were to be supplied by defendant, be on hand as the work progressed. In fact, no substantial work could be accomplished at all in connection with the filter house without having the pipe on hand. The installation of this piping was unlike that encountered in the building trade generally, where the plumbing and heating pipes could be provided by merely inserting sleeves through the concrete walls for the placing of the pipes at a later time. Here the filter house was to be watertight in all respects, necessitating the actual installation of the pipes through the wall areas before the concrete could be poured, so that as tight a seal as possible could be achieved. The defendant's engineer knew this, and allowed no deviation from that procedure.

Generally, even though the Government may fail for justifiable reasons,

to secure timely delivery of materials which under a construction contract it is required to furnish, no liability for resulting delays will attach, unless it can be found that its representatives were at fault. United States v. Foley, 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44; Barling v. United States, Ct.Cl., 111 F.Supp. 878; Cf. Torres v. United States, Ct.Cl., 112 F.Supp. 363. We think there was fault on the part of defendant in this case.

There is present, in a contract such as this one, an implied obligation on the defendant that it will not do that which will hinder the contractor in the performance of the contract. When the contractor is delayed by a negligent act chargeable to the Government, it is a breach of this clearly implied obligation, and the Government is liable for the damages sustained by the contractor because of the delay. Fuller Co. v. United States, 69 F.Supp. 409, 108 Ct.Cl. 70; Kehm Corporation v. United States, 93 F.Supp. 620, 119 Ct.Cl. 454; Cf. J. J. Kelly Co. v. United States, 69 F.Supp. 117, 107 Ct.Cl. 594. In the absence of evidence to the contrary, when one party agrees to furnish particular materials to be used by the other, he must be held to have agreed "to furnish them in time to be installed in the ordinary and economical course of the performance of the contract." Walsh v. United States, 102 F.Supp. 589, 591, 121 Ct.Cl. 546, 554–555. Defendant is guilty of just such a breach here. Its officials were negligent, not only in failing to use due diligence in expediting delivery of materials once the work had begun, but in their failure to place their purchase orders so as to permit timely delivery. Unlike the Barling case, supra, here it has been shown that the defendant knew prior to giving plaintiff notice to proceed that it would be impossible to secure delivery of the necessary pipe and fittings in time to enable the work to proceed in an orderly manner. The facts clearly show this. Procurement officials knew that delivery could not be made until a date which would make completion within the required time impossible. They failed without cause to act in this regard with reasonable promptness. Possessed of such knowledge, it was a breach of contract on the part of the defendant to give plaintiff notice to proceed requiring her to begin one day after notice and to complete work on August 17, knowing that the necessary pipe and fittings needed in the filter house would not begin to be delivered by suppliers until the end of the first week in August. Purchase orders for a few items were placed on June 14, but most of the heavy piping required for the filter house was not ordered until June 19. Some of the orders for the piping materials were placed as late as the first of August, with delivery being made in late September. It must be pointed out that from the supplier's standpoint there was no delay in the delivery of the pipe and fittings since the Government was given delivery on the dates promised. The fault was that of the defendant. All efforts at expediting that transpired during the progress of the work were not caused by any default on the part of the supplier but were efforts to effect delivery prior to the promised dates. Under these circumstances we are of opinion that the defendant is liable for that portion of the loss sustained because of the late delivery of Government-furnished materials.

While no dispute now exists between the parties as to the total number of 71 days of delay or as to the amount of the loss, $38,390.33, the parties do differ on what portion of the total delay they believe chargeable to each other.

Although plaintiff received the notice of award on June 17 requiring the work to be commenced within one day, the work was actually begun on the 16th, and the work remained close to schedule through mid-July at which time excavation for the filter house had been completed. Plaintiff was then prepared to pour the concrete foundation, but was unable to do this until August 11, when the 16-inch cast-iron drainage piping, which the defendant supplied, was received. Work then progressed until September 4, although delay was encountered during this period because certain

cast-iron specials furnished by the plaintiff were not delivered by suppliers until August 26. On September 4 work stopped completely because of the lack of materials which the defendant was required to furnish, and which materials were required to be placed in the wall concrete. (Finding 16.) On September 11 work commenced again and continued through until completion on October 27, 1943. Delays during this latter period were entailed because of the delay in delivery of other materials the defendant was required to furnish which did not arrive until the latter part of September (finding 16) and because of plaintiff's difficulty in obtaining bricklayers. (Finding 20.)

Plaintiff charges the Government with responsibility for the entire period of delay and asks recovery of the full amount of the loss, while defendant accepts responsibility for only 14 or 15 days of the delay, and denies the right of recovery of any amount by plaintiff on the grounds that just what amount of the total loss those 14 or 15 days were responsible for is impossible to determine.

■■ The defendant cannot in the circumstances of this case be charged with the full responsibility for the entire 71-day delay, as plaintiff alleges. As mentioned above, progress was hampered during periods when both parties were at fault. Nor can the defendant's breakdown of 14 or 15 days be accepted. It would be impossible to assign particular days of delay to one of the two categories, Government's fault or concurrent, as defendant has attempted to do. This is so because much of the work overlapped, and there was only one period when all work stopped completely. However, we do not believe that this difficulty should operate to bar plaintiff from all recovery. Upon a consideration of all the evidence, the commissioner of this court found that a reasonably accurate computation of the delay, wholly chargeable to the defendant as a result of the failure, without justifiable cause, to perfect timely delivery of materials can be made, and on that basis, he has found that defendant was responsible for one-half of the 71-day delay in the completion of the contract work. This finding is fully supported by the record. The commissioner likewise found that the excess cost to plaintiff resulting from delays in deliveries of materials which the Government was required to furnish was $19,195.16, one-half of the total loss of $38,390.33. Defendant has excepted to both these findings on the basis that it is impossible to set aside 35½ specific days of delay as chargeable to it, and assuming, *arguendo*, that such a designation could be made, then it remains impossible to apportion any fraction of the total loss between concurrent delays chargeable to both parties and those chargeable to the Government alone. We find these exceptions to be without merit.

In regard to this question of the difficulty in arriving at precise determinations in assessing damages, this court in Needles for Use and Benefit of Needles v. United States, 101 Ct.Cl. 535, 618, stated as follows:

"* * * Absolute certainty as to the amount of damage is not essential, this being a matter for determination according to the circumstances of each case. There is no objection to damages that they are difficult to ascertain, depending upon contingent and uncertain events, for in all actions for damages for breach of contract the foundation or underlying principle is full compensation for the wrong done. * *"

■ Although the proof may not be so positive as to enable the court to make an absolute determination of the precise excess costs resulting from delays chargeable to one party, an approximate and reasonable allowance on the basis of all the facts and circumstances may be made. See Fuller Co. v. United States, 63 F.Supp. 765, 105 Ct.Cl. 248. The rule which precludes recovery because of uncertain or speculative damages, upon which defendant relies, has no application here. That rule applies only to situations where the fact of dam-

age is itself uncertain. Here the fact of damage suffered by plaintiff is certain. It is enough under these circumstances if there is a basis for a reasoned inference as to the extent of the damage chargeable to one of the parties. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515, Eastman Kodak Co. v. Southern Photo Material Co., 273 U.S. 359, 377–379, 47 S.Ct. 400, 71 L.Ed. 684.

On the basis of these principles which we hold to be applicable to the situation here, and upon a review of the whole record in the light of the commissioner's findings and the parties' exceptions thereto, we affirm and adopt those finding (findings 21 and 36) as being reasonable and supportable calculations as to the amount of delay and resulting damages chargeable to the defendant.

Plaintiff's petition as to Count I is dismissed. Judgment is entered for plaintiff on Count II in the amount of $19,195.16.

It is so ordered.

JONES, Chief Judge, and MADDEN, and WHITAKER, Judges, concur.