**LAWRANCE AERONAUTICAL CORP.
v. UNITED STATES.**

No. 48942.

United States Court of Claims.

Nov. 3, 1953.

Stanley Suydam, Washington, D. C.,
Herbert Wilson Smith, New York City,
and Walter M. King, Jr., Washington, D.
C., on the brief, for plaintiff.

Paris T. Houston, Washington, D. C.,
Warren E. Burger, Asst. Atty. Gen., for
defendant.

Before JONES, Chief Judge, and LIT-
TLETON, WHITAKER, MADDEN and
HOWELL, Judges.

JONES, Chief Judge.

Plaintiff sues under the War Contract
Hardship Claims Act,[1] also known as the
Lucas Act, for an equitable determina-
tion praying for relief from alleged loss-
es suffered in the performance of certain
contracts (hereinafter described) en-
tered into with various Government de-
partments and agencies authorized to en-
ter into contracts under section 201 of
the First War Powers Act of 1941.[2]
Such losses are alleged to have been in-
curred without plaintiff's fault or negli-
gence between September 16, 1940, and
August 14, 1945. In its petition plaintiff
also seeks relief with respect to three
specific contracts under the general ju-
risdiction of this court as set forth in
28 U.S.C. § 1491 and under the pro-
visions of the Contract Settlement Act of
1944, 58 Stat. 649, 41 U.S.C.A. §§ 101–
125.[3]

Defendant has filed a motion for sum-
mary judgment directed only to those
portions of the petition praying for relief
under the Lucas Act, on the ground that
there is no genuine issue as to a neces-
sary jurisdictional fact in that plaintiff
did not file prior to August 14, 1945, with
a department or agency of defendant, a
sufficient written request for the type of
relief contemplated by the Lucas Act.

Plaintiff has incorporated in its peti-
tion a list of those contracts on which
it allegedly incurred losses and concern-
ing which losses plaintiff alleges it had
on file with the department or agency
concerned requests for relief within the
meaning of the Lucas Act. Paragraph
8 of its petition alleges that:

" * * * the losses sustained on
said contracts and subcontracts by

---

1. 60 Stat. 902, as amended by 62 Stat. 869,
   992, 41 U.S.C.A. § 106 note.

2. 55 Stat. 839, 50 U.S.C.A.Appendix, §
   611.

3. Paragraphs 10, 11, and 12 of plaintiff's
   petition.

this corporation were caused by the large amount of research, experimental and preliminary work required to develop the products required by the departments and agencies of the Government under the said contracts, the numerous changes requested by the departments and agencies, and the improvement and perfection of the products to meet changed conditions and requirements, all of which were at the instance and request of the contracting departments and agencies of the Government, * * *"

Plaintiff also alleged (paragraph 6 of petition) that copies of each written request for relief on which plaintiff now relies are contained in its Lucas Act claim filed on February 7, 1947, with the Navy Department, along with all other information in its possession relative to its war contracts and subcontracts as required by the Lucas Act. Plaintiff did not incorporate in its petition by reference or otherwise the Lucas Act claim filed with the Navy Department, but defendant did submit such claim with its motion for summary judgment. In its brief, plaintiff incorporated by reference defendant's Exhibits 1 and 2 which contained plaintiff's claim before the Navy Department, and also defendant's Exhibit 3 which is a copy of Public Voucher DOV No. 4604, April 27, 1944, on contract NOa(s)-551.

It is defendant's position that the requests for relief relied on by plaintiff and contained in its claim to the Navy Department (defendant's Exhibits 1 and 2), were claims for contractual relief understood and treated as such by both parties, and were in no sense sufficient to put the contracting agencies on notice that they were being requested to grant plaintiff extra-legal relief such as was possible only under the First War Powers Act. Fogarty v. United States, 340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10.

Plaintiff's own characterization of its losses as set forth in paragraph 8 of its petition, quoted above, indicates that the claims based on them were contractual

in nature rather than extra-legal. An examination of the requests themselves bears out this impression.

The contracts listed on plaintiff's Exhibit A to its petition and included in Group I, were three experimental contracts calling for the manufacture and delivery of a number of 5-cylinder auxiliary power plants between 1941 and 1944. Plaintiff was paid the total price stipulated in the contracts ($101,700), but the actual costs of performing the contracts exceeded such price by $267,666.02. Included in Group II (Exhibit A) were three subcontracts awarded to plaintiff by Electric Boat Company and covering the procurement of a number of 2-cylinder auxiliary power plants and spare parts for installation in Navy PT boats for the United States Navy. Plaintiff's costs in excess of the contract prices paid plaintiff are alleged to have amounted to $68,933.53 plus certain inventory costs of $46,436.35.

Beginning in 1941, plaintiff was awarded three production contracts covering, among other things, the procurement of the 5-cylinder engines developed under the Group I experimental contracts, and in 1943 the three production contracts were consolidated into a cost-plus-a-fixed-fee contract (NOa(s)-551). Plaintiff also secured cost-plus contracts to produce in numbers the 2-cylinder engines developed under the Group II experimental contracts, with both the Navy (NOa(s)-551) and the Army (W535-ac-27329.) Plaintiff also had certain fixed-price production contracts for the procurement of these engines.

In connection with plaintiff's fixed-price production contracts, plaintiff filed "claims" with defendant which, in effect, amounted to attempts to secure defendant's approval of plaintiff's plan to liquidate portions of its previous development costs by adding to the fixed price a sum representing the amortization of the previous development costs of the product covered by the contracts. With respect to the cost-plus production contracts, plaintiff asked the contracting agencies to treat such development costs as reim-

bursable items of cost under the terms of the contracts and of T.D. 5000, incorporated therein by reference.

Plaintiff relies particularly upon its letter of April 9, 1943 to Captain William H. Gardner, the contracting officer on contract No. W535–ac–27329, a cost-plus contract for the production of the experimental engines. The following excerpts from this letter are significant:

"This letter is submitted in connection with Contractor's claim for reimbursement on that portion of his capitalized Auxiliary Power Plant Development, charged to Contract No. W535–ac–27329, in accordance with Appendix 'A' attached.

\*   \*   \*   \*   \*   \*

"In this letter, the Contractor will brief his method of setting up and amortizing his Auxiliary Power Plant Development expense, with specific reference to certain points, which have been raised by the Army Air Force Audit.

"On the basis of production contracts, booked and anticipated, Lawrance Engineering and Research Corporation determined during April 1941 that March 1, 1941 represented the date when its basic experimental and development program was completed, and that in the future, it would be considered as a production operation.

\*   \*   \*   \*   \* ”

Included in this decision were the following:

"1. That the expenditures on Auxiliary Power Plant experimentations to February 28, 1941, should be deferred, and these deferred expenditures should be amortized over the production of Auxiliary Power Plants on the basis of contracts then on hand or to be received.

"2. ˙ That with minor exceptions, no further expenditures on Auxiliary Power· Plants should be deferred, as such expenditures would be applicable to specific models, and

would be properly the cost under production contracts.

"3. That such future experimental, engineering, and test work on Auxiliary Power Plants, as would not be applicable to production contracts, would be expensed currently, except where such work was in the nature of developing specific new products.

"It is pertinent to note that these decisions were made and put into effect at least eight months prior to any contemplation of CPFF contracts.

"It is also pertinent that in the subsequent negotiations of CPFF contracts, and in answer to direct questions, we were led to believe that our Auxiliary Power Plant development, as set up, would represent an allowable cost under Section 26.9, Paragraph (d), of T.D. 5000, reading in part as follows:

" '(d) Other manufacturing cost. [Here follows most of Paragraph (d).]' "

The balance of this letter was devoted to arguments contending that the contractor's expenditures on the Auxiliary Power Plants during the experimental period were properly a cost of performing the later CPFF production contracts, that such costs were properly deferred and amortized in accordance with a reasonably consistent plan and that under the provisions of the contract and T.D. 5000 such expenditures should be allowed as a reimbursable item of cost of performing the CPFF production contract.

Nothing in the above-described letter suggests to us that plaintiff was seeking more than it believed itself to be entitled to by virtue of the provisions of its CPFF contract, nor do we believe the contracting agency would have been justified in inferring otherwise. Plaintiff, in an affidavit of William A. Hunter, submitted in support of its opposition to defendant's motion, relies on two paragraphs in the above letter as being suffi-

cient to place the agency on notice that plaintiff was seeking extra-legal relief by way of the First War Powers Act, as follows:

"Contractor contends that the basis for amortization, as established in Appendix 'A', is equitable.

\* \* \* \* \* \*

"Contractor contends that the work during the experimental period has resulted in his being able to produce for the United States Government and commercial users a product of definite value to the war effort; that the Contractor's only means of recovery of the expenditures during this experimental period are by amortization against production contracts."

If, under any conceivable theory, the above statements could be considered extra-legal arguments, they at best are only equitable reasons presented by the contractor in an effort to secure favorable consideration on a legal and contractual claim. Taken as a whole, the letter clearly bases the claim on the contractor's rights under its CPFF contract and T.D. 5000, and, we think, rightly so. As pointed out by defendant, the contracting agency apparently took this same view, because it later allowed a substantial portion of these development costs in accordance with plaintiff's requests. Why all of the costs were not allowed does not appear, but that fact does not, we think, convert the balance of the claim into one for extra-legal relief.

Similar contentions with respect to development expenses were made to the Navy in connection with Contract No. NOa(s)–551 and a substantial portion of the costs claimed were allowed under that contract.

The other documents relied on by plaintiff as being proper requests for extra-legal relief in connection with these items, were (1) a copy of Recapitulation of Navy Claims; (2) the Final Settlement Proposal covering Partial Termination of Contract NOa(s)–551 requesting, among other things, partial reimburse-

ment of these costs; (3) a copy of Invoice No. 1101, dated July 23, 1942, in the amount of $168,827.09, "To withdrawal against advance payment deposit account for Development expenditures up to February 28, 1942, applicable to contract [W535–ac–27329]" for labor, material, and overhead costs; (4) a copy of the Contractor's Statement of Claim and Statement of Costs Incurred, dated May 22, 1944; (5) a copy of Invoice No. 1206, dated September 8, 1942, "To reimburse for Development Costs up to February 28, 1942, applicable to contract W535–ac–27329" in the amount of $162,772.10; (6) a copy of Statement of Costs of shipment to November 1, 1943 on Contract NOa (s)–551; (7) copy of a letter, dated April 10, 1942, from the Supervisory Cost Inspector of the Third Naval District to the Bureau of Supplies and Accounts, recommending that the contractor be reimbursed for a portion of its deferred development costs, and that further consideration be given to the propriety of granting reimbursement for the balance; (8) a copy of Invoice No. 1346 dated October 26, 1942, "To reimburse for Development Costs up to February 28, 1942" applicable to Contract No. 85909 (later consolidated in Contract No. NOa(s)–551) for labor, material, and overhead in the amount of $113,548.56.

All of the above documents are concerned with the contractor's attempt to have its deferred development costs considered by the contracting agencies as properly reimbursable under the CPFF contracts and T.D. 5000 and are in no sense requests for extra-legal relief from losses.

The next contract on which plaintiff claims it suffered a loss concerning which it filed with the contracting agency a request for relief as a matter of grace, is Navy Contract NOa(s)–74702. Plaintiff alleges that pursuant to this contract it agreed to develop for the Navy a 9-cylinder engine according to Navy specifications for a fixed price of $40,000; that the actual cost to plaintiff of performing the contract totaled $46,988.90; that on November 2, 1945, defendant

terminated the contract for the convenience of the Government, paid plaintiff only $36,000, and "failed, neglected, and refused to pay the balance of $10,988.90". As requests for relief within the meaning of the Lucas Act, plaintiff relies on three documents. The first document is a copy of Invoice No. 10545, dated March 22, 1945, showing $46,988.90 as the cost incurred in developing one 9-cylinder engine and one supercharger plus drawings. The invoice showed advance payments received in 1942 and 1943 of $36,000 and a balance due of $10,988.90. We see nothing in this document which could be said to put the Navy on notice that it was being requested to grant the contractor relief from losses as a matter of grace.

The next document relied on is a copy of a Settlement Agreement on Contract NOa(s)–74702, dated January 3, 1945, in connection with the termination of the contract. No request for relief of any kind is hinted at in this document.

The remaining document submitted is merely a letter dated January 23, 1947, from the Navy Department to plaintiff acknowledging the receipt of information on the change of plaintiff's name from Lawrance Engineering & Research Corporation to Lawrance Aeronautical Corporation.

It does not appear that any request for relief within the meaning of the Lucas Act was filed with the Navy in connection with this contract. We note that this claim is also urged under the general jurisdiction of this court in paragraph 11 of the petition.

Plaintiff's next Lucas Act claim is in connection with a contract with the Bureau of Supplies and Accounts (Navy) No. 83180 and supplements thereto. The total loss claimed is $86,596.57. The record contains no information concerning the nature of the contract and plaintiff does not indicate in its petition, brief, nor in its Lucas Act claim presented to the Navy, on what documents it relies as requests for relief. The contract is mentioned by number in two of the schedules included in plaintiff's claim before the Navy under the Lucas Act (defendant's Exhibit 1, pp. 59 and 101). Inasmuch as plaintiff alleges in its petition that all the requests for relief relied on are contained in its claim presented to the Navy in 1947 under the Lucas Act, and since no such requests relative to this contract appear in such claim, the losses, if any, incurred under this contract cannot be considered under the Act.

Plaintiff also claims relief from losses allegedly incurred under Contract NOa (s) 4510, in the amount of $27,645.66. This contract required plaintiff to supply trained personnel to service the engines manufactured by plaintiff and in use on Navy aircraft, and provided for the payment of a monthly stipend for each man furnished, together with allowances for subsistence and quarters. The contract was completed and plaintiff filed its claim with the Navy for compensation thereunder. The Navy cost inspector disallowed certain charges because of what plaintiff terms "disagreement with interpretation of the contract". The disallowances were appealed, but we are not advised as to the final outcome. From all that appears on the face of plaintiff's statement in its Lucas Act claim before the Navy Department in 1947, the claim was made under the provisions of the contract and the problem involved was one of the proper interpretation of certain of the contract provisions. The documents relied on as requests for relief were a series of vouchers tendered to the Navy for amounts claimed to be due under plaintiff's interpretation of the contract. If the Navy was on notice of anything, it was on notice that plaintiff believed it had a good claim under its contract. The requests for relief relied on do not meet the requirements of the Lucas Act.

The last contract relied on is one with the War Production Board, No. 197, dated June 14, 1944. This was an experimental contract to be performed at an estimated cost of $14,875, to be completed on August 1, 1944. The contract provided that the work was not to extend beyond August 1, 1944, "except as otherwise authorized in writing by the Contracting Officer and agreed to by the

Contractor." The contract also provided that the contractor should not be required to incur costs in excess of the maximum amount stipulated in the contract unless the contracting officer first agreed in writing to reimburse the contractor therefor. Article 9 provided that, upon termination, the maximum amount payable might not exceed the maximum amount specified in the contract less any amounts already paid to the contractor.

The only account of record as to what transpired under this contract is contained in plaintiff's Section 17 claim under the Contract Settlement Act of 1944 from which it appears that when plaintiff had not completed the work by the termination date, it received oral permission of the contracting officer to continue work and was advised by that officer to request an amendment extending the contract term. Work continued with the apparent approval of the Government and on September 17, 1944, the contract was amended to extend the performance time to September 30, 1944, but without payment of any expenses incurred between August 2, and September 17, 1944. In its Contract Settlement Act claim, plaintiff alleged that WBP officials had assured the contractor that this matter would be rectified to cover expenditures made during that period. The claim next asserted that the excess costs were due to changes, adjustments, and experiments suggested and requested by representatives of the contracting agency. A portion of the claimed additional expenses was approved by the Settlement Review Board under Section 17 of the Contract Settlement Act. Plaintiff then appealed the balance not allowed to the Appeal Board, Office of Contract Settlement, on November 28, 1946, the appeal proceeding being designated No. 138.

The above claim under the Contract Settlement Act and two invoices, one for expenses incurred during September 1944 ($12,737.01), and one for expenses incurred during August 1944 ($9,972.65), are relied on by plaintiff as constituting proper requests for extra-legal relief under the Lucas Act.

In our opinion, nothing in the claim or the invoices would serve to put the contracting agency on notice that it was being asked to do more than consider the claim within the framework of the Contract Settlement Act of 1944. A portion of the claim was allowed under the Act and the balance was the subject matter of an appeal to the Appeal Board at the time of the Lucas Act claim to the Navy Department. We do not think that the documents relied on by plaintiff in connection with this claim constitute proper requests for relief within the meaning of the Lucas Act.[4]

In conclusion, we hold that plaintiff did not have on file with the departments or agencies concerned, any requests for, extra-legal relief from losses as contemplated by the Lucas Act, in connection with the contracts listed on Exhibit A to its petition, and accordingly, there is no genuine issue as to that material fact. Defendant's motion for summary judgment is granted and plaintiff's petition is dismissed insofar as it requests relief under the Lucas Act. The case will be referred to a Commissioner of the court for further proceedings in connection with the claims alleged under the court's general jurisdiction and under the Contract Settlement Act,[5] in paragraphs 10, 11, and 12 of the petition.

It is so ordered.

MADDEN, WHITAKER and LITTLETON, Judges, concur.

---

4. This loss is also made the basis for a claim under the court's general jurisdiction. See paragraph 12 of petition.

5. We note that the Appeal Board, Office of Contract Settlement has rendered decisions in two proceedings involving plaintiff corporation: Proceeding No. 138, Lawrance Aeronautical Corporation v. Civilian Production Administration, decided February 13, 1947, Vol. 1, Decisions of the Appeal Board; Proceeding No. 159, Lawrance Aeronautical Corporation v. War Department, decided February 19, 1947, Vol. 1, Decisions of the Appeal Board.