**F. M. HARGRAVE, D/B/A Hargrave Construction Company, For Use And Benefit of L. B. Fugitt and Carroll Johnston D/B/A Kanotex Construction Company, Commercial Standard Insurance Company, and General Casualty Company of America**

**v.**

**The UNITED STATES.**

No. 48899.

United States Court of Claims.

April 5, 1955.

Farley W. Warner, Washington, D. C., for plaintiff Hargrave, d/b/a Hargrave Const. Co., for use and benefit of L. B. Fugitt and Carroll Johnston d/b/a Kanotex Const. Co. Peyton Ford, Washington, D. C., was on the brief.

Clifford B. Kimberly, Kansas City, Mo., for plaintiffs Commercial Standard Ins. Co. and General Cas. Co. of America.

Bruce G. Sundlun, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

Plaintiffs' petition is filed in two counts; the first count alleging a Lucas Act [1] claim, and the second count claiming damages for breach of contract arising from an airport construction project at Enid, Oklahoma.

The second amended petition herein was signed by F. M. Hargrave, d/b/a Hargrave Construction Company, for use and benefit of L. B. Fugitt and Carroll Johnston d/b/a Kanotex Construction Company, and two surety companies. Hargrave has no financial interest in any of the claims made.

On March 26, 1943, Hargrave entered into a contract with the United States to furnish materials and perform certain construction work at the site of the Enid, Oklahoma, Municipal Airport. This field was to be used by the Air Force as a military field and the construction work included grading, paving, drainage facilities, the building of one new runway, and the lengthening of the other two existing runways, as well as the construction of several taxiways. On March 23, 1943, two days before he signed the prime contract, Hargrave entered into subcontracts with A. J. Spicer, sole trader, d/b/a Kanotex Construction Company, for the performance of the work under four items of the contract including the grading, removing and stockpiling of existing blended rock asphalt wearing

1. 60 Stat. 902, as amended 62 Stat. 869, 992, 41 U.S.C.A. § 106 note.

course, removal of existing gravel base course, laying selected material, and the gravel base course. Fugitt and Johnston were in no way parties to this contract.

Shortly after Spicer entered into subcontracts with Hargrave, Spicer entered into a partnership agreement with Fugitt and Johnston. Spicer contributed his subcontract to this partnership. However, within a few weeks Spicer left the partnership and the subcontract work was from that time all carried out by Fugitt and Johnston, and neither Hargrave nor the defendant was informed that Spicer was not interested in the said subcontract. Hargrave was never informed by Spicer, either orally or in writing, that Spicer had assigned his subcontract to Fugitt and Johnston.

The subcontract work was completed on November 13, 1943, and final payment was signified by a release executed August 12, 1944, which reserved Kanotex's claim. There is no evidence that Fugitt and Johnston have ever asserted any claim or suit against Hargrave.

### Count 1.

■■ Upon the close of plaintiffs' proof relative to count 1, defendant moved pursuant to rule 49(b)[2] for a dismissal of that count on the ground that plaintiffs had never made a valid request for relief under the Lucas Act, supra. The commissioner of this court made detailed findings of fact and filed a report recommending that defendant's motion be granted. On the basis of those findings (11 through 21) and our review of the record, we accept the recommendation of the commissioner and dismiss plaintiffs' claims under count 1 of the petition on the ground that plaintiffs had never filed with the appropriate department a valid request for relief under the Lucas Act, supra. Throughout all negotiations, plaintiffs believed and asserted that the Government, as of right owed them the amounts claimed. Recovery under the Lucas Act requires that the written request for relief must be such as to apprise the Government that the claim being made was one for extralegal relief outside of any contractual obligation. Fogarty v. United States, 340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10; Lawrance Aeronautical Corporation v. U. S., 115 F.Supp. 903, 127 Ct.Cl. 714. Plaintiffs have not met that requirement.

### Count 2.

Under plaintiffs' breach of contract count, plaintiffs allege five breaches by the Government. For the purpose of this opinion we will refer to each alleged breach separately.

■ The first is for damages for delay allegedly caused by the Government's refusal to set stakes for two weeks at the beginning of the contract work.

The record shows that Mr. Russell, dirt foreman for Kanotex, "admitted Kanotex was not delayed because of lack of stakes."

Section 1–17(b) of the specifications provided that the Government would furnish "limit marks reasonably necessary for the conduct of the work," and further provided:

"The contractor shall exercise proper precaution to verify the figures shown on the drawings before laying out any part of the work, and will be held responsible for any errors therein that might have been avoided. He shall promptly inform the contracting officer of any errors or discrepancies he may discover in the drawings and specifications, in order that the proper corrections may be made."

Pursuant to these provisions the Government sent a survey party to the site "about two weeks before the prime contract was let to Hargrave" so that "grading cuts and fills" could be measured as provided for in the specifications. When the Government's surveyors were about half finished with their cross sectioning, a Mr. Hill, also a surveyor, and a representative of Kanotex arrived on the site to check the elevations for the plaintiffs. He found little or no discrepancies be-

2. Now 49(c) (3) under our present Rules which were adopted October 15, 1953.

tween the results of his work and those obtained by the defendant's survey party and, after working and checking for about 10 days, Mr. Hill accepted the defendant's results. These actions were, thus, in strict conformance with the contract specifications.

On the question of whether plaintiffs were "delayed about two weeks by the defendant's refusal to set grading stakes," the evidence shows that the fact is that stakes were not set because it took Mr. Hill that long to check and accept the results of defendant's survey party. Kanotex had a right to send Hill to the site to check the defendant's survey results, but this action was taken for the convenience and benefit of Kanotex, and it is not established that defendant's actions delayed the plaintiffs to any appreciable extent or caused them any damage.

The defendant's survey party finished its cross sectioning April 2, 1943, while Hill did not leave the site until after that date.

Thus, if there was a delay it was caused by the action of plaintiff Kanotex and not the defendant, and plaintiffs are not entitled to recover on this item of the claim.

■ The second claim is for overhaul resulting from excess grading not shown on the original plans.

On June 14, 1943, a change order entitled "Modification No. 1" was issued, under article 3 of the prime contract, ordering that the "performance of the work" be adjusted or revised so as to give effect to new grading plans which showed the increased excavation. There was no reference in the modification to payment for overhaul on account of any excess grading. Instead the modification expressly stated that "it is further understood and agreed that all other terms and conditions of said contract shall be and remain the same." The effect of this language was to provide payment at only the contract price of $0.342 for the excess excavation. This modification, with its absence of any provision for payment for overhaul, would normally be conclusive except that plaintiff insists that Mod-

ification No. 1 was not accepted and signed until the area engineer stated that signing it would not jeopardize the pending claim for overhaul. The area engineer, Favero, willingly admitted that he had made such a statement.

Defendant says that regardless of the terms of the understanding between plaintiffs and the area engineer, the latter had no authority to make such an agreement and in no event can it be held binding upon the Government.

This position is well taken. Although the area engineer may have been the authorized representative of the contracting officer for limited purposes under the contract, there is no evidence that he had authority to vary the terms of the contract document but only had authority delegated to him by the district engineer and contracting officer, one Col. F. J. Wilson.

The facts in the instant case are almost the same as in the case of Chalker & Lund Co. v. United States, 107 F.Supp. 734, 749, 123 Ct.Cl. 381, 408, wherein the court said:

"This position is well taken. Although the area engineer may have been the authorized representative of the contracting officer for certain limited purposes under the contract, there is no indication either in the contract or elsewhere of any authority in the area engineer, without approval of the contracting officer, to so amend the contract itself by an agreement of this sort. * * * Plaintiff was bound to take notice of the limits of the area engineer's authority, and the Government is not bound by his unauthorized acts. Kelly v. United States, 91 F.Supp. 305, 116 Ct.Cl. 811, 817–820."

For the reasons stated, there can be no recovery by plaintiffs on this item of the claim.

■ Plaintiffs' third item of claim is for overhauling allegedly resulting from a decision by the Government to keep the airport runways open for "touch-and-go" training landings during the progress of the work.

The record shows that plaintiffs signed Modification No. 5 to the contract providing for such zoning of the field at "no change in the contract cost." It is not established that the Government area engineer led them to believe that the acceptance of the modification would not prejudice any claim for overhaul. Furthermore, the record shows that when the zoning plan was first announced Kanotex's Mr. Graham said that the plan advanced "was the same as *everbody* had agreed to previously" and that Hargrave's Mr. Lechner stated "Kanotex has indicated to him that if they could not close the runways it would not make much difference to them." Moreover, neither Hargrave, Fugitt nor Johnston testified that any representative of the defendant had ever told them the field was to be kept closed to flying during the progress of the work, nor that any specific representations about zoning the field were made which affected the Kanotex bids.

Having signed Modification No. 5, which provided for such zoning of the field without "change in the contract cost," plaintiffs would not now be entitled to recover on the basis of this claim.

■ Plaintiffs' fourth item of claim is for overhaul allegedly resulting from "undercutting," the proposed grading at the south end of the field in order to remove some "unsuitable grading material."

Modification No. 7 covered this item and provided that plaintiffs were to be paid at the contract price for such yardage required to be undercut. There is no dispute over whether payment was made at the modification price for all the yardage undercut. The findings show that most of the yardage undercut was deposited in fill areas located not more than 1,000 feet away and was not "overhaul" on the excavation undercut within the terms of Modification No. 7. Moreover, the facts show that the $0.342 per cubic yard allowed was adequate compensation for overhaul undercut yardage 1,000 feet or less.

Whether defendant's area · engineer made representations to plaintiffs before Modification No. 7 was accepted by them, which led them to believe that acceptance of the modification would not prejudice any claim for overhaul, is immaterial since it is found there was no overhaul. The authority of the area engineer to bind the Government under those circumstances is also immaterial. Plaintiffs are not entitled to recover on this item of the claim.

■ Plaintiffs' fifth item of claim is based upon allegations that defendant's inspectors prevented the attainment of proper compaction in the subgrading by requiring excessive wetting.

The evidence shows that Kanotex was required to use an excessive amount of water on certain areas to be compacted, making compaction more difficult, and also that unwarranted or improper instructions by defendant's inspectors were *in part* responsible for the compaction difficulties. The evidence also shows that plaintiffs' compaction troubles were caused by a naturally bad soil condition, plaintiffs' inability to properly handle the drainage and prevent ponding on the site, and lack of sufficient and proper equipment. Thus, it is clear that plaintiffs' alleged problems were not solely caused by the claimed Government interference.

Even though we may feel that extra costs were incurred by reason of defendant's actions in requiring Kanotex to use excessive water and making compaction more difficult, it is not possible from the evidence to determine how much of the excess costs resulted from the unnecessary or excessive wetting. This court cannot indulge in speculation, and the testimony gives no clue as to the amount of damage plaintiffs may have suffered as a result of the alleged Government interference. Addison Miller, Inc. v. United States, 70 F.Supp. 893, 108 Ct.Cl. 513; Kremer v. United States, 88 F.Supp. 740, 116 Ct.Cl. 358.

The facts show that plaintiffs' compaction troubles were also caused by "*a naturally bad subsoil condition,*" *plaintiffs' inability to properly handle the drainage and prevent ponding on the site, and lack of sufficient and proper equipment.*

Where both parties contribute to a loss neither can recover damages unless there is in the proof a clear apportionment of the loss and the expense attributable to each party. Coath & Goss, Inc., v. United States, 101 Ct.Cl. 702, 714; Newport News Shipbuilding & Dry Dock Co. v. United States, 79 Ct.Cl. 25, 36.

Furthermore, there is a serious question as to whether plaintiffs brought their excessive water complaints to the attention of the area engineer. If this was not done, clearly the plaintiffs could not recover.

We are compelled, therefore, to deny recovery on this claim for want of proof.

The defendant has raised several other questions as to the right of recovery by plaintiffs on all the items of count 2 which, in the light of this opinion, we are not called upon to decide.

### COUNTERCLAIM.

The defendant has filed a counterclaim herein alleging that there is due and owing to the United States by A. J. Spicer, L. B. Fugitt and Carroll Johnston, d/b/a Kanotex Construction Company, withholding taxes, Federal unemployment taxes, and Federal insurance contribution assessments.

There is no dispute over the correctness of the Government's counterclaim and the facts show the total amount due to be $26,401.69.

Under date of March 24, 1943, F. M. Hargrave entered into subcontracts with A. J. Spicer, d/b/a Kanotex Construction Company, for the complete performance of certain specified items included in the prime contract and completion and payment bonds were furnished to Hargrave accordingly by Commercial Standard Insurance Company and General Casualty Company of America as cosureties. Shortly thereafter Spicer entered into a partnership agreement with Fugitt and Johnston and within a few weeks thereafter Spicer withdrew from the partnership and all work included under the subcontract was done and completed by Fugitt and Johnston. The contract was satisfactorily completed on November 13, 1943 and final payment was signified by a release executed under date of August 12, 1944.

No default by Kanotex occurred in complete performance of the subcontract and the cosureties never at any time entered upon completion of any part of the subcontract.

It was neither briefed nor argued by defendant that the cosureties could be held for any of the taxes claimed under defendant's counterclaim. Indeed the law is to the contrary, and we assume the Government is not urging the counterclaim against the cosureties.

The other plaintiffs have neither briefed nor argued that they are not liable to the Government for the taxes alleged in the counterclaim and we assume they are not contesting their liability on this point.

Accordingly, we hold that defendant is entitled to recover from plaintiffs L. B. Fugitt and Carroll Johnston, d/b/a Kanotex Construction Company, on the counterclaim in the amount of $26,401.69, plus interest as provided by law.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.