## McPHERSON v. SAN JOAQUIN COUNTY.

### Sac. No. 498; March 24, 1899.

#### 56 Pac. 802.

**Well Contract.**—In an Action on a Well Contract, Where Plaintiff alleged that he was prevented from finishing the well because of defendant furnishing unsuitable casing, which collapsed and stopped up the well, an allegation that plaintiff offered to dig another well without profit, at its actual cost, was unnecessary to the cause of action, and ineffectual as an offer to perform.

**Well Contract.**—Where a County Having a Well Bored was to Furnish the casing, the presumption that it should be suitable and of proper strength is not overcome by Civil Code, section 1654, providing that an uncertainty in a contract between a public body and a private person shall be presumed to be caused by the latter, and most strongly construed against him.

**Well Contract.**—Specifications for a Well Contract Provided that all materials should be of the best quality and suitable. Held, that this applied to the casing to be furnished by the county having the well bored, as well as to the material furnished by the contractor.

**Well Contract.**—In an Action on a Well Contract, a Count for Extra Work caused by and on account of improper casing furnished by defendant having the work done states a cause of action.

**Well Contract.**—Where, Under a Well Contract, the Owner Could Stop the work at any time, the contractor cannot recover damages for being prevented from completing the contract by the owner's furnishing defective materials, this not being done willfully.

**Well Contract.**—In an Action Against a County on a Well contract, the petition alleged that the county entered into the contract, acted on it, and made payments under it; and the contract recited that the county made it through its duly authorized agent. Held, on demurrer, that the petition was not bad as not setting out the authority under which the agent acted.

**Well Contract.**—A County cannot Escape Liability Under Its Contract to furnish suitable casings for a well being bored for it because of the neglect of duty of its officers in selecting the casings.

APPEAL from Superior Court, San Joaquin County.

Action by J. K. McPherson against San Joaquin county. There was a judgment for defendant and plaintiff appeals. Reversed.

17

Louttit & Middlecoff for appellant; W. B. Nutter for respondent.

CHIPMAN, C.—Action upon contract. The complaint alleges that plaintiff and defendant entered into a written contract by which plaintiff agreed to bore, for the use of defendant, "a well for flowing water and gas in accordance with the specifications prepared therefor." Plaintiff agreed to furnish all necessary tools and labor for the work, and bore the well to the depth of two thousand feet, unless defendant "direct the discontinuance of the work." The size of the bore of the well was to be twelve inches, carried down to the greatest possible depth. Where changes were found necessary in the size of the bore, in going down, defendant was to have the right to decide as to such changes. The contract provided "that the casing to be used in said well should be furnished by the said party of the first part [defendant], . . . . and shall be selected and designated by the said party of the first part." Usual covenants were given by plaintiff to make the work first-class in all respects. Plaintiff was to keep an accurate account of developments in striking water or gas as the work progressed, and report fully to defendant the results obtained. Plaintiff was to be paid at the rate of $2.25 per foot for the first one thousand feet, $2.50 per foot for the next five hundred feet, and an increased amount per foot as the well was deepened. The contract also further provided: "The total number of feet of said well to be bored being two thousand feet, unless a sufficient flow of gas shall be found at a lesser depth, or work be sooner suspended by" defendant. A provision required plaintiff to make a statement to defendant on the first of each month of the number of feet completed the preceding month, and, if found correct, the account should be approved by defendant, and a warrant issued to plaintiff for the amount due, less twenty-five per cent reserved until full completion of the contract. Full and detailed specifications were made part of the contract. In the specifications is the provision following: "The casing to be furnished to the contractor, delivered on the grounds; he to place the same in position. . . . . All casing and steel shoes for the well will be furnished by the board of supervisors." It was provided that, if the work should be discontinued

by defendant, plaintiff was to "be entitled to the full payment of such portion of the work as has been satisfactorily completed, at rates that have been agreed upon in the contract"; defendant reserving the right to order the work stopped at any time. The complaint alleges "that plaintiff duly performed all the conditions on his part to be performed under said contract until said well was bored and completed to a depth of eleven hundred feet," about July 10, 1897; " . . . . that the casing selected, designated and furnished by said defendant to plaintiff to be used in said well was of such inferior quality that on said day said casing, without any fault on the part of plaintiff, and while plaintiff was in the due performance of his part of said contract, failed, collapsed, gave way and obtruded itself into said well and stopped up said well at a point about one thousand feet in depth in said well to such an extent that it was impracticable and impossible for plaintiff to further proceed with the boring and completion of said well; that, prior to the time that plaintiff had used said casing which failed . . . . and obtruded itself into said well as aforesaid, said plaintiff had warned said defendant and its officers and agents that said casing was insufficient and unfit to be used in said well, and had protested against being required to use the same in said well, but said defendant had required said plaintiff to proceed to use said casing in said well, and had refused to procure proper casing to be used in said well." At this point in the complaint it is alleged that, after the casing collapsed as stated above, plaintiff offered to bore a new well, without profit to him, to the depth of one thousand feet, if defendant would furnish casing and pay the actual expense of boring the well, and from that point plaintiff would proceed to complete the new well under the terms of the contract. This clause was stricken out on motion. The complaint then alleges that the sum of $2,500 was due for boring the well to the depth of eleven hundred feet, no part of which has been paid, except $1,875.01, leaving due the sum of $624.99. Allegations are made showing that the claim was duly presented, and was rejected by the supervisors. A second count alleges the sum of $250 to be due for extra work caused by and on account of the improper casing furnished plaintiff. A further claim is also made of $500 damages for being prevented from com-

pletely performing the contract. Judgment was entered for defendant on the general demurrers to the several counts, from which, and also from the order granting the motion to strike out the clause above noted, plaintiff appeals.

1. The motion to strike out was properly granted. The objectionable matter was not necessary to the cause of action alleged in the complaint. If it was intended as an offer to perform, it failed of that object, for it was entirely different from the contract and was, in effect, an offer to dig a new well on different terms.

2. Respondent claims that defendant had the right to select the casing, and, if it erred in exercising its discretion, that fact gave plaintiff no right of action. Respondent invokes section 1654 of the Civil Code, which provides that where uncertainty exists in a contract between a private party and a public officer or body, as such, the uncertainty is presumed to be caused by the private party, and the contract must be interpreted most strongly against the private party. We can discover no uncertainty in the provision that defendant was to supply the casing. If there is any uncertainty, it is as to whether defendant was at liberty to furnish unsuitable casing. It is claimed that in the contract defendant did not in terms agree that the casing shall be of proper strength and suitable for the purpose. But this would be implied, and no presumption should be indulged, under section 1654, to overcome an implied covenant so obviously just. When defendant undertook to furnish casing, it agreed to furnish casing suitable for the purpose. But in the specifications is a clause which, fairly construed, we think, in terms put upon defendant the duty to furnish suitable casing. It reads: "The bidder to whom the contract may be let will be required to enter into an agreement .... to furnish and erect machinery and plant of the most approved kind, and all tools and materials of every description used in the prosecution of the work shall be of the best quality and suitable for the services to be performed, so that every possible security may be afforded to guard against accidents, so that the work may be successfully prosecuted and speedily completed." Quite as much depended upon having suitable casing, as in having suitable machinery with which to do the work; and this clause refers to the materials to be used, as well as to the

machinery. Respondent contends that it was plaintiff's duty to use any casing furnished, and, if it happened to be worthless and wholly unsuitable, it was still his duty to use it, and take the consequences, to which the maxim, "Damnum absque injuria," applies. This contention is neither sound in law nor in morals. Respondent makes the same, but no other, objections to the second count. We think a good cause of action is stated for the extra work. As to the claim for damages, we find nothing in the contract to support it. Defendant reserved the right to terminate the contract at any stage of the work. When the casing collapsed, the work ceased, and defendant refused to allow resumption of any further boring of the well. We do not think plaintiff is entitled to recover for profits he might have made on the unfinished portion of the well. If it had been alleged that defendant willfully, and for the purpose of evading the contract, caused the bad casing to be used, it might be otherwise; but, so far as the complaint shows, it was the bad judgment of defendant, honestly exercised, that caused the trouble.

3. Respondent contends that the complaint is insufficient because it fails to show that the contract was made by authority of defendant. This contention rests upon the recital in the contract that it was entered into "by and between the county of San Joaquin, state of California, by and through James Brown, the duly authorized agent of said county for said purpose, party of the first part," and plaintiff, the second party. The contract is signed: "James Brown. J. K. McPherson"; the attestation reading: "In witness whereof, the said parties have caused this instrument to be properly subscribed." The complaint alleges that the contract was entered into by defendant. Respondent cites section 2 of the act of April 1, 1897 (Stats. 1897, p. 452), which provides that the power of a county "can only be exercised by the board of supervisors, or by agents and officers acting under their authority, or authority of law." It is claimed that the contract set forth in the complaint shows that it was executed by an agent of the county, and it therefore became necessary to allege the authority under which the agent acted. Furthermore, it is claimed that while, under the allegations, the proof at the trial might have shown authority, still, upon demurrer, the complaint

is insufficient; citing Murphy v. Napa Co., 20 Cal. 497; House v. Los Angeles Co., 104 Cal. 79, 37 Pac. 796; Jerome v. Stebbins, 14 Cal. 457; Green v. Palmer, 15 Cal. 411, 76 Am. Dec. 492, and other cases. This is not an instance of powers delegated to an agent, as was that in 104 Cal., 37 Pac., supra, nor is it a case where there is a failure to allege every fact essential to be proved, as were the other cases cited. Here the allegation is that the county entered into the contract, and the contract itself recites that the county made it by and through its duly authorized agent. The complaint also shows that the county acted under the contract, and made payments for work done under it. We think the allegations were sufficient. Defendant's point must be made by the answer, and upon the trial.

4. It is next contended that the county is not liable for the neglect of duty of its officers; citing Crowell v. Sonoma Co., 25 Cal. 316; Santa Cruz R. Co. v. Santa Clara Co., 62 Cal. 180; Chope v. City of Eureka, 78 Cal. 588, 12 Am. St. Rep. 113, 4 L. R. A. 325, 21 Pac. 364, and other like cases. The cases cited are actions arising out of the tortious acts of public officers, and are not in point. The cause of action here arises from breach of contract. Defendant cannot escape liability by setting up its neglect of duty in failing to perform its part of the contract. Even actions for damages arising out of the neglect of public officers, formerly held not to be maintainable, are in some cases now allowed, under the new constitution: Tyler v. Tehama Co., 109 Cal. 618, 42 Pac. 240. See, also, Denning v. State, 123 Cal. 316, 55 Pac. 1000. The judgment should be reversed, with directions to overrule the demurrer.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is reversed, with directions to overrule the demurrer.