**Jacob LICHTER and Jennie L. Lichter, d/b/a Southern Fireproofing Company, Plaintiffs**

v.

**MELLON-STUART COMPANY, Defendant.**

**Civ. No. 17082.**

United States District Court
W. D. Pennsylvania.
April 10, 1961.

◆

Davis C. Burroughs, Jr., Moorhead & Knox, Pittsburgh, Pa., Paul W. Steer, Steer, Strauss & Adair, Cincinnati, Ohio, for plaintiffs.

Charles C. Arensberg, Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

In this action the plaintiffs, Jacob and Jennie L. Lichter, citizens of Ohio, and doing business as Southern Fireproofing Company (Southern), a partnership, seek to recover from the defendant, Mellon-Stuart Company (Mellon), a Pennsylvania corporation, with its principal place of business in Allegheny County, Pennsylvania, balances due on two construction contracts and damages for the alleged breach of each. Mellon counterclaimed for damages arising out of an alleged breach of one of the construction contracts. The court has jurisdiction because of diversity of citizenship. The law of Pennsylvania is applicable.

On August 20, 1955, Mellon executed the prime contract (Exhibits 3, 3A, 3B, 5 a–k)[*][1] with the Federal Reserve Bank of Cleveland (Owner) to construct a 10-story building as an addition to the Pittsburgh branch of the Federal Reserve Bank at Grant Street, Pittsburgh, Pennsylvania, and to make certain altera-

---

[*] Unless otherwise designated, all exhibit references are to plaintiffs' exhibits.

1. The prime contract provided that "The General Conditions of the Contract for the Construction of Buildings, Standard Form of the American Institute of Architects, Fifth Edition" formed a part thereof. The Sixth Edition was marked as an exhibit and admitted in evidence without objection (Exhibit 3B).

tions to the existing 7-story bank building. The new building was to tie into the old building.

Mellon, as general contractor for such work, entered into numerous subcontracts, including two subcontracts with Southern (Exhibits 1 and 2), dated September 19, 1955, whereby Southern agreed under one contract to perform the exterior stone work (stone contract) and under the other contract to perform the interior masonry work (masonry contract).

The subcontracts incorporated the prime contract, so far as applicable, together with the plans, specifications and General Conditions. The prime contract provided that the work "shall be substantially completed within twenty months after the execution of this Contract".

The subcontracts did not specify a time for the completion of the stone contract or the masonry contract, but provided:

"That the Subcontractor * * * finish the said work fully, completely, and perfectly to the satisfaction of the Architect and the Contractor and *as required by the progress of the work and as directed by the Contractor*, time being of the essence of this contract, on the part of the Subcontractor. (Emphasis supplied.)

\* \* \* \* \* \*

"That the Subcontractor * * * do all work required hereunder in harmony with the other Subcontractors * * *, and with such speed that the Contractor and its other Subcontractors shall be enabled, so far as the assistance of this Subcontractor is requisite, to complete said building, within the time stipulated by the contract with the Owner.".

The agreed price for the stone contract is $56,190, and for the masonry contract, $161,601; since Southern substantially performed both contracts, it is entitled to recover these amounts. Mellon is entitled to a credit for completing a small portion of the work required by both contracts. P.L.E. Contracts §§ 286, 296. Southern is also entitled to recover the cost of change orders, stipulated to be the sum of $7,858.86, and field orders, stipulated to be the sum of $4,103.66. Mellon is entitled to a credit of $220,966.-43 paid to Southern on account of both contracts (supplemental pretrial order No. 1).

Southern admits that it owes Mellon $2,157.17 for services furnished (T., p. 305; see amended complaint ¶¶ 8, 15). In its brief Southern authorizes this credit (Southern's brief, pp. 4, 45; Exhibit 82; plaintiffs' Proposed Findings of Fact and Law).

Southern was informed by Mellon that it could start the stone work prior to June 1, 1956, that the work should be completed within 60 to 90 days, and that the masonry work was to start in the middle of July, 1956 and be completed by December 1, 1956 (Exhibit 6).

Southern calculated its bids on Mellon's representations that the stone work would be completed in the summer of 1956 and that the masonry work would be done in an enclosed building.

The parties in the beginning did not contemplate that the stone work would be performed in the winter or that the masonry work would be performed during the winter months in an unenclosed building. See Progress Schedule received by Southern on October 13, 1955 (Exhibit 6). This schedule showed that the entire project was to be completed on June 30, 1957, which was two months and ten days longer than the twenty months' time limit specified in the prime contract.[2]

The specifications, inter alia, provided:

"Alterations [to the old building] * * * shall be done in definite sections or divisions, and work confined to limited areas, in which the work shall be completed before other sections or divisions are commenced.

"Work on alterations within the existing building shall not be started until the addition is practically com-

2. The entire project was not finally completed until the fall of 1958 (T., p. 552).

plete and comparable space or elevators can be provided in the addition. The Owner and contractor shall compromise and agree as to the time and procedure of all alterations within the existing building * * *." (p. B.)

*"Procedure*

"The demolition of the exterior walls of the existing building and the alterations within the existing building shall not be done until the new floors and walls of the addition are in place and the work on the addition is nearing completion." (p. 9.)

Without fault on the part of Southern, its work under the contracts was delayed for various reasons and had not been completed as of January 10, 1958, when the contracts were terminated. Mellon completed the work and for so doing is entitled to credits as hereinafter set forth.

Southern experienced considerable delay in performing both contracts. The whole project from the beginning was plagued by many unforeseen contingencies which caused delay. Among these were (1) issuance by the Architect of some 192 change orders; (2) postponement of the start of the stone work from June 1, 1956 to the latter part of August, 1956; (3) shortage of steel which resulted in slow-paced fireproofing of the spandrel beams with concrete; (4) erection of hoist by Mellon on Grant Street side of addition which interfered with normal setting of stone by Southern;[3] (5) some stone purchased by Mellon and set by Southern was rejected because of defects and had to be replaced; (6) late arrival of roofers; (7) late installation of windows; (8) winter weather; (9) failure of materialmen to deliver material; (10) strikes; (11) failure of other subcontractors to complete their work pursuant to the Progress Schedules; (12) failure in putting elevators into service; (13) failure of Architect to make prompt decisions; (14) security regulations arising from altering the old bank building while the bank was doing business; (15) interference by Inspector Antolic, an employee of the Owner.[4]

■ In my opinion, under the provisions of the contracts,[5] Mellon is not lia-

---

3. Although a close question, I do not find that the interference of Mellon's hoist was a wrongful act or neglect on the part of Mellon which constituted a breach of contract.

4. Also see, Mellon's summary of delays under date of February 25, 1958 (Exhibit 65), and the summary of Southern's foreman (Exhibit 33A).

5. Article VI in Exhibits 1 and 2 provides: "That the Subcontractor shall not be allowed extra time by reason of delays, unless they be occasioned by substantial changes, omissions or additions, or by fire or the act of God, or by reason of the acts of the Owner or Contractor, in which cases the Subcontractor shall, within twenty-four hours after the occurrence of the cause of delay, notify the Contractor and Architect in writing and the Subcontractor shall be allowed such additional time only *(but no pecuniary compensation)* for the completion of the work as the Architect and Owner shall award, whose decisions shall be final and conclusive upon the parties hereto." (Emphasis supplied.)

Article 18 of Exhibit 3B provides:
"*Delays and Extension of Time.*—If the Contractor be delayed at any time in the progress of the work by any act or neglect of the Owner or the Architect, or of any employee of either, or by any separate Contractor employed by the Owner, or *by changes ordered in the work,* or by strikes, lockouts, fire, unusual delay in transportation, unavoidable casualties or any causes beyond the Contractor's control, or by delay authorized by the Architect pending arbitration, *or by any cause which the Architect shall decide to justify the delay,* then the time of completion shall be extended for such reasonable time as the Architect may decide.

"No such extension shall be made for delay occurring more than seven days before claim therefor is made in writing to the Architect. In the case of a continuing cause of delay, only one claim is necessary.

"If no schedule or agreement stating the dates upon which drawings shall be furnished is made, then no claim for delays shall be allowed on account of failure

ble to reimburse Southern for its increased costs caused by these delays. In general, the aforesaid delays were contemplated by the contracts, were not caused by Mellon, and time of performance was duly extended by Mellon to Southern. Cf. Henry Shenk Co. v. Erie County, 319 Pa. 100, 178 A. 662; United States v. Howard P. Foley Co., 329 U. S. 64, 67 S.Ct. 154, 91 L.Ed. 44; Crook Co. v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438; United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53. Article 18 in the Shenk contract is almost identical to the first paragraph of Article 18 in the instant contracts. See footnote 5. The instant contracts contain no other provisions for recovery of damages for delay except Article VII of Exhibits 1 and 2 which is not applicable.

■ The controlling principle of law seems to be that absent contractual provisions to the contrary, the contractor is not liable to reimburse the subcontractor for the latter's increased costs caused by delays contemplated in the contract, but the contractor is liable in damages when any delay caused by the contractor constitutes a breach of the contract express or implied.

## The Masonry Contract

Beginning in January, 1957, Mellon required Southern to start the interior masonry work. It had become increasingly apparent that Mellon was deviating from the two Progress Schedules (Exhibits 6 and 12) received by Southern on October 13, 1955 and September 21, 1956, respectively. When in January, 1957, Mellon directed Southern to erect the incinerator in its entirety instead of performing the masonry work in a normal floor by floor manner, the latter protested immediately and repeatedly. Southern promptly demanded payment for increased costs. Mellon suggested that the invoice be submitted at the end of the work; this was done, and Mellon submitted Southern's claim to the Architect who rejected it.

Because the building was not ready for the interior masonry work, Southern in January, 1957, requested a suspension of the interior masonry work until the mechanical trades had completed their work in order that it might proceed in an orderly manner on each floor in sequence. Mellon refused and thereafter required Southern to perform its masonry work piecemeal and in a haphazard and dis-

to furnish drawings until two weeks after demand for such drawings and not then unless such claim be reasonable.

"This article does not exclude the recovery of damages for delay by either party under other provisions in the contract documents." (Article 18 is made applicable to the contracts between contractor and subcontractor by Article 37.)

Article X of Exhibits 1 and 2 provides:

"That the Contractor may at any time during the progress of the work require any deviation from, addition to or omission in the plans and specifications without giving notice to the surety hereinafter required *and the Subcontractor agrees to make such changes of whatever character they may be as part of this contract;* and in case such changes shall make the work more or less expensive then that originally required, a proportionate addition or deduction shall be made from the contract price hereinafter agreed to be paid; that the Architect or Owner shall fix the time to be allowed the Subcontractor on account of such changes, also the amount of the said addition to or deduction from

the contract price, whose decision shall be final and without appeal, except that the Contractor may at its option order the work to be proceeded with on force account. All extra work shall be done according to the provisions relating to the original work *and shall only be done at the written order of the Contractor, otherwise no charge can be made or collected therefor.*" (Emphasis supplied.)

Article 4 of Exhibit 3 provides:

"*Changes in the Work*—The Owner, through the Architect, may from time to time, by written instructions or drawings issued to the Contractor, make changes in the Drawings and Specifications herein referred to, issue additional instructions, require additional work, make changes in the work herein provided for, or direct the omission of work previously ordered, and the provisions of this Contract shall apply to all such changes, modifications, additions, and omissions with the same effect as if they were embodied in the original Drawings and Specifications. * * *."

orderly manner.[6] In addition, contrary to the specifications, Southern was directed by Mellon to do its (Southern's) masonry work on the alterations of the old building before the new building was "practically complete". All this required Southern to perform the masonry work over a longer period of time than if it had been performed in sequence, floor by floor, and increased its costs considerably.

■ Although there was some evidence to the contrary, I find as a fact that the Owner did not, indeed could not, compel Mellon to order Southern to proceed in advance of the other trades and out of sequence. The most that can be said from the record is that when the delay in completion of the addition and alterations became apparent, the Owner and Architect frequently urged Mellon to expedite all the work, which is quite usual and to be expected. (See Exhibits 18 and 19; T., pp. 448, 562).[7]

■ Ordinarily, a general contractor is liable to a subcontractor for damages resulting from delays not attributable to the latter; however, this right to recover damages may be validly precluded by the provisions of the contract. 17 C. J.S. Contracts § 502b(3) (b), p. 1060; 115 A.L.R. pp. 66, 77; P.L.E. Contracts § 288.

Southern's right to damages for delays was precluded by the provisions of the masonry contract. Article VI, Exhibit 1; Article 18, Exhibit 3B; Article X, Exhibit 1; Article 4, Exhibit 3 (quoted in footnote 5).

Although the masonry contract did provide that Mellon " * * * shall be responsible for the coordination of the trades, subcontractors and material men * * * " (Specifications, p. 8, Exhibit 3A), it also provided that the Subcontractor shall perform the masonry work " * * * *as required by the progress of the work and as directed by the Contractor * * *.*" (Emphasis supplied.) Article I, Exhibit 1.

■ I conclude it was not a breach to direct Southern to perform the masonry work as it became available, and, therefore, Mellon is not liable for Southern's additional costs which stemmed primarily from excusable and contemplated delays. Cf. Carroll Elec. Co. v. Irwin & Leighton, 80 Pa.Super. 438; Henry Shenk Co. v. Erie County, supra, 319 Pa. at page 103 ff., 178 A. at page 664; United States v. Howard P. Foley Co., supra; Crook Co. v. United States, supra; United States v. Rice, supra; Restatement, Contracts § 315(1) (b).

■ But even if Mellon's conduct with regard to Southern can be regarded as a breach of contract, it is impossible to separate the costs attributable to delays as such from damages resulting from the breach.[8]

Southern claims that its additional costs amounted to $41,733.40. No basis for a reasonably accurate computation of damages attributable only to the alleged breach is apparent to me from the evidence. See J. J. Kelly Co. v. United States, 69 F.Supp. 117, 118, 107 Ct.Cl. 594; Kremer v. United States, 88 F. Supp. 740, 743, 116 Ct.Cl. 358; cf. Chalender v. United States, 119 F.Supp. 186, 127 Ct.Cl. 557.

### Damages for Breach of the Stone Contract

■ In my opinion Mellon did breach the stone contract. I find that Mellon

---

6. Southern had to perform 25 operations on one floor and an average of 13 operations on the others; whereas, 2 operations would have been required if the masonry work could have proceeded in an orderly and coordinated manner in the summer months or in an enclosed building. (See Exhibits 31 and 31A.)

7. In my opinion the evidence pertaining to "savings" or "unexpended funds" amounting to $158,000, in which the Owner and Mellon were to share, is irrelevant and immaterial to the issues in this case.

8. Southern admitted as much in arguing that it was entitled to recover all its additional costs resulting from the delays (T., p. 281).

undertook to affix the shelf angles to the spandrel beams. Mellon started this work in June, 1956. Despite timely warning by Southern, many of these shelf angles were not level and in line as required for proper stone setting. I find that Mellon negligently failed to properly set these shelf angles and failed to promptly adjust them. These negligent omissions substantially interfered with and hindered Southern in the contemplated normal performance of the stone contract. Southern promptly complained to Mellon and demanded reimbursement for its additional costs so caused. Mellon agreed to discuss the bill for these costs at the end of the job.

 The bulk of the shelf angle adjustments were tardily made by Mellon prior to November, 1956, but a number were made in the succeeding three months. This inexcusable negligence, unanticipated by Southern, constituted a breach of contract on the part of Mellon which caused Southern damages for which Mellon is liable. See Henry Shenk Co. v. Erie County, supra, 319 Pa. at pages 104–106, 178 A. at page 664,[9] citing with approval McPherson v. San Joaquin County, 6 Cal.Unrep. 257, 56 P. 802, where the breach was furnishing defective materials; George A. Fuller Co. v. United States, 69 F.Supp. 409, 108 Ct.Cl. 70, where the breach was delay in furnishing models.

Article 31 (Exhibit 3B),[10] made applicable to the subcontract by Article 37, provides that one party shall be reimbursed for damages caused by "any wrongful act or neglect of the other party". Article 31 of the contract in the Shenk case is substantially similar to the first paragraph of Article 31 in the instant case. These damages are to be distinguished from increased costs caused by excusable and contemplated delays which cannot be recovered. Article VI, Article 18, Article X, and Article 4 (quoted in footnote 5). In commenting on similar provisions pertaining to delays, it was stated in Henry Shenk Co. v. Erie County, supra, 319 Pa. at page 104, 178 A. at page 664:

"[S]uch provisions have no reference to an affirmative or positive interference on the part of the owner [contractee] * * * apart from the contract, *or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work* unless delay in performance is contemplated by the contract; *these interferences or failures may cause damages in other ways than that contemplated by the provision against delays.*" (Emphasis supplied.)

See, also, Sheehan v. City of Pittsburg, 213 Pa. 133, 62 A. 642, a breach of contract case which is explained in Frederick Snare Corporation v. City of Phila., 325 Pa. 460, 463, 190 A. 889.

 In every contract between a contractor and subcontractor, an implied promise exists on the part of the contractor that he will do nothing to prevent, interfere, or hinder the subcontractor in his performance or increase

9. Shenk was decided in favor of the County contractee, because the inordinate delay by public officers in letting other contracts moved the Court to deny damages to the contractor for reasons of public policy, a point not applicable to the contract in suit or to contracts generally.

10. Article 31 provides as follows:
"Damages.—If either party to this Contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage, provided the Owner shall be responsible for and at his option insure against loss of use of any of his existing property, due to fire or otherwise, however caused.
"Claims under this clause shall be made in writing to the party liable within a reasonable time of the first observance of such damage and not later than the time of final payment, except as expressly stipulated otherwise in the case of faulty work or materials, and shall be adjusted by agreement or arbitration.
"The Contractor is relieved of responsibility for damages to the work due to causes beyond the control of and without fault or negligence of the Contractor."

the cost thereof. Kress House Moving Co. v. George Hogg Co., 263 Pa. 191, 195, 106 A. 351; Williston on Contracts, rev.ed., vol. 5, §§ 1293A, 1318.[11] In the instant contract, not only is the promise implied, but it seems to be expressed in Article 31 (footnote 10).

■ When the subcontractor sustains damages by a negligent act chargeable to the contractor, as was the negligent failure to install the shelf angles properly and promptly, it is a breach of this clearly implied and expressed contract, for which the contractor is liable for the damages sustained by the subcontractor. Sheehan v. City of Pittsburg, supra; Restatement, Contracts § 315(1), and see cases cited in footnote 11. The subcontractor is not obliged to abandon the work and sue for damages, but he may proceed to complete the work and then claim damages. Sheehan v. City of Pittsburg, supra; Studer v. Rasmussen, 80 Wyo. 465, 344 P.2d 990, 998; Williston on Contracts, vol. 3, rev. ed., § 704, at page 2027; Corbin on Contracts, vol. 3A, 1960 ed., § 755, at page 503; 17 C.J.S. Contracts § 502b(3) (a), page 1060.

■ It is impossible to determine exactly Southern's damages attributable to the breach of the stone contract as distinguished from its increased costs attributable to contemplated and excusable delays. As stated in Chalender v. United States, supra, 119 F.Supp. at page 191, I do not believe that this difficulty should bar plaintiff from all recovery if a reasonable basis for damages can be found. Southern proved that its increased costs for delays covering 2 months and 6 days (68 days) amounted to $10,330. There is evidence that Southern's stone setting was delayed six weeks (42 days) by Mellon's defective work on the shelf angles (T., pp. 193, 198 ff.). Accepting this to be the fact, I think it affords a reason-

able basis on which to estimate Southern's damages for the breach. Chalender v. United States, supra; George A. Fuller Co. v. United States, supra. Accordingly, I conclude that the proportionate sum of $6,380 for six weeks' delay will compensate Southern for the damages caused by Mellon's breach of the stone contract, which together with damages for detention amount to total damages in the sum of $7,496. See Babayan v. Reed, 257 Pa. 206, 101 A. 339; J. E. Faltin Motor Transp., Inc. v. Eazor Express, Inc., D.C.W.D.Pa., 172 F.Supp. 175, 180, affirmed, 3 Cir., 273 F.2d 444; Lackawanna Iron & Steel Co. v. L. & W. V. R. R., 299 Pa. 503, 149 A. 702; Restatement, Contracts § 337, comment on clause (b)i.

### Southern's Claim for Extra Work

■ Southern contends that it is entitled to $217.58 for extra work performed by it under the stone contract. I have no doubt that the work was performed. However, Southern's foreman, Hutter, failed to procure signed work orders from Mellon for five items of extra work. Subsequently, an audit by Southern revealed the omissions and it requested payment from Mellon. Mellon refused (Exhibits 47, 45) and invoked the provision of Article X (Exhibit 2) which provides:

> "All extra work shall be done according to the provisions relating to the original work and shall only be done at the written order of the Contractor, *otherwise no charge can be made or collected therefor.*" (Emphasis supplied.)

I conclude that Southern is not legally entitled to the $217.58 claim.

■ Southern also claimed $67.40 (invoice 560E28) for extra work performed in patching around the door between Rooms B–23 and B–18 in the base-

---

11. See also the following cases involving construction contracts: Peter Kiewit Sons' Co. v. United States, 151 F.Supp. 726, 138 Ct.Cl. 668; Kehm Corp. v. United States, 93 F.Supp. 620, 119 Ct.Cl. 454; DeRiso Bros. v. State, 161 Misc. 934, 293 N.Y.S. 436; Thompson v. United States, 124 F.Supp. 645, 130 Ct.Cl. 1; Chalender v. United States, supra; George A. Fuller Co. v. United States, supra.

ment (Exhibit 49 and attachment). This work was ordered by Mellon's superintendent, Porter. The attachment is a time sheet signed by Porter. Southern's foreman performed the work as an extra. Mellon's president, Peters, denied that it was. This work was not marked by cross-hatching as masonry on Southern's original plans. I find that this work was not included in the original masonry contract and is, therefore, extra work which was ordered by the contractor and verified by the time sheet signed by Mellon's superintendent. It is to be observed that the architect, Bott, and the superintendent, Porter, did not deny these facts at the trial. I conclude that Southern has proved its claim for $67.40.

### Credit Due Mellon for Completing Southern's Contracts

On January 10, 1958, no more work being then available, Southern asked Mellon if it would entertain a credit in lieu of Southern's completing the contracts. Mellon agreed providing that the credits were satisfactory. A survey of the uncompleted work was made by both parties. Southern calculated the credit on this uncompleted work to be $1,513.81 if the work had been done pursuant to the contract according to Mellon's representations and the Progress Schedules (Exhibits 6 and 12). This proposed credit was not acceptable to Mellon. On February 1, 1958, Mellon issued a 48-hour notice to Southern to complete the contracts (defendant's Exhibit 7–Z–10) pursuant to Article VII (Exhibits 1 and 2). Southern refused and Mellon completed the work required by both contracts.

Pursuant to Article VII, Mellon is entitled to deduct the costs of completion. P.L.E. Contracts § 296. But what are those costs? Mellon alleges that its actual costs in performing this work amounted to $3,662.54 and issued its invoice in that amount. This invoice was not offered in evidence. The particulars of the work involved in the completion were not proved, although Mellon in order to make sure of the actual cost there-

of had Mr. Shack, a representative of the Architect, check the number of workmen employed, the hours they worked, and the work performed. Mellon's superintendent, Porter, knew the details of the completion work, but he did not testify thereto. Mr. Shack was not called to testify to the details of the work which he allegedly had verified. The testimony of Peters, Mellon's president, was not convincing since he lacked first-hand knowledge and testified from information received from Porter.

■ In view of the controversy between the parties on this score, I think Mellon had the burden of proving the items of costs going into the completion work pursuant to Southern's contracts eliminating any extras or changes. In my opinion, it failed to sustain its burden although within its power to do so. I conclude, however, that Mellon should be allowed credits, as Southern admits them to be due, i. e., on the stone contract in the sum of $709.72, and on the masonry contract in the sum of $804.09 (Exhibit 43; plaintiffs' brief, p. 45).

### The Counterclaim

Mellon's counterclaim is based on an alleged breach by Southern of the stone contract. It seeks to recover the sum of $19,490 for the cost of an alleged 2-month delay caused by Southern when it laid off two masons at a crucial time, i. e., for about one month beginning October 19, 1956 (defendant's Exhibits 13 and 14).

■ A combination of several conditions caused delay in the performance of the stone contract (see Exhibits 35, 65; T., pp. 515–523), not the least of which was Mellon's own negligence in failing to properly set the shelf angles. I find that Southern did not contribute to the alleged delay in any substantial extent. Mellon did not even report this alleged delay on the part of Southern to the Owner in its summary of delays (Exhibit 65). Neither did it claim damages for the alleged breach of contract until this suit was brought. Moreover, from October 19th to November 16th,

Southern had at least 4 masons on the job; the layoff of 2 masons did not materially slow down the stone work (plaintiffs' Exhibit 14); and any delay for which Southern is responsible was minimal and certainly not 2 months. In my opinion, Southern did not breach the stone contract; but even if it did, no reasonable basis for computing the damages flowing therefrom has been proved.

Judgment will be entered against Mellon on the counterclaim.

## Summary

Mellon is liable on the contracts in suit in the following amounts:

| | |
|---|---:|
| Stone contract | $ 56,190.00 |
| Masonry contract | 161,601.00 |
| Written change orders—stipulated | 7,858.86 |
| Field orders approved—stipulated | 4,103.66 |
| Invoice 560E28 for patching around door—extra work | 67.40 |
| | $229,820.92 |

Mellon is entitled to the following credits:

| | |
|---|---:|
| Payments by cash—admitted | $220,966.43 |
| Credit on account of completing masonry work | 804.09 |
| Credit on account of completing stone work | 709.72 |
| Credit on account of services furnished—admitted | 2,157.17 |
| | $224,637.41 |

| | |
|---|---:|
| The balance due to Southern is: | $ 5,183.51 |
| Interest thereon from February 10, 1958 to April 10, 1961: | 984.87 |
| Damages due to Southern for breach of stone contract: | 7,496.00 |
| | $13,664.38 |

This opinion shall be deemed to embody findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P. 28 U.S.C.A.

An appropriate judgment will be entered.

### Order of Court

And now, to-wit, this 10th day of April, 1961, after non-jury trial, and after due consideration of the briefs and argument of counsel, it is ordered adjudged and decreed that judgment be and the same hereby is entered in favor of the plaintiffs, Jacob Lichter and Jennie L. Lichter, d/b/a Southern Fireproofing Company, and against the defendant, Mellon-Stuart Company, in the sum of $13,664.38.

It is further ordered that judgment be and the same hereby is entered on the

226

counterclaim in favor of the aforesaid plaintiffs, Jacob Lichter and Jennie L. Lichter, d/b/a Southern Fireproofing Company, and against the aforesaid defendant, Mellon-Stuart Company.

Costs to be paid by defendant, Mellon-Stuart Company.