BATES & ROGERS CONSTRUCTION CORPORATION *et al.*, Plaintiffs-Appellants, *v.* NORTH SHORE SANITARY DISTRICT *et al.*, Defendants-Appellees.

Second District    No. 79-611

Opinion filed December 22, 1980.—Supplemental opinion filed on denial of rehearing January 30, 1981.

LaDonna Loitz Chuchro and Donald V. O'Brien, both of O'Brien, Carey, McNamara, Scheuneman & Campbell, of Chicago, for appellants.

M. R. Conzelman, of Conzelman, Schultz, Snarski & Mullen, of Waukegan, and Stephen R. Swofford, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Bates & Rogers Construction Corporation (the Contractor) and two of its subcontractors, Economy Mechanical Industries, Inc., and Goldberg & O'Brien Electric Company (the Subcontractors), filed suit against the North Shore Sanitary District (NSSD) and its engineers, doing business individually and as Greeley & Hansen, a partnership (the Engineers) claiming damages arising from the construction of portions of the Gurnee Sewage Treatment Plant.

The complaint as amended was dismissed on the motion of the defendants on the grounds of multifarious pleading and for failure to state a cause of action. The plaintiffs appeal.

## I
## THE CASE AGAINST NSSD

In substance the plaintiffs allege in count I as amended that NSSD had the duty to provide electrical power to the work site within 450 days

of the construction starting date which was June 8, 1973; that under the contract terms NSSD impliedly covenanted and warranted that they would not obstruct, interfere with or burden the cost of performance of the work and would provide access to the job "in orderly fashion and sequence"; that NSSD individually and through its Engineers breached the express and implied convenants and implied warranties in the contract by inaccurately designing the electrical switchgear and system and failing to furnish electrical power within 300 days; that NSSD preempted the contractual relationship between the Contractor and Westinghouse Electric Co., which was to manufacture the switchgear for the Contractor; that as a proximate result of the breach plaintiffs were denied access to the work and the sequence of the work was disrupted, burdening the performance of plaintiffs requiring them to sustain cost overruns in the form of excessive labor costs, supervision, winter protection of the work and other increased costs, all of which were "exclusive of delay damages none of which are sought hereunder," praying judgment for $672,550 for the Contractor and $487,000 for one of the Subcontractors.

In count III, essentially the same allegations against NSSD are included with the additional allegations that the Contractor entered into an agreement with Westinghouse Electric Corporation to manufacture the electrical equipment designated by defendant; that NSSD and its engineers inadequately designed the switchgear equipment involved which the Contractor had a contractual duty to supply; that the equipment could not be manufactured and installed without extensive redesign; and that as a proximate result the Contractors were unable to energize the plant until late January 1976, "and in the process were denied access prior thereto to a material portion of the work, the sequence of the work was disrupted and burdened so as to increase the cost thereof, and to cause the proliferation and duplication of labor and labor operations not otherwise required"; that damages were thereby incurred of the same nature as provided in count I in the amount of $472,000 for the Contractor and in the amount of $366,000 and $352,000 respectively for the two Subcontractors. In addition, the plaintiffs charge the defendant in both counts with wrongfully withholding monies due for work done on the project, alleging that it had been satisfactorily completed and was operational.

In count V the plaintiffs alleged that the NSSD had retained 10% as additional security for the complete performance of the contract; that the District had no property interest in the "retainage"; that it had nevertheless commingled these funds with construction funds owned by the District which were invested and produced substantial earnings. In the count it was further alleged that the NSSD is the trustee of the funds and prays that the court declare a constructive trust in favor of the plaintiffs on all earnings on the retainage.

NSSD filed a motion to dismiss counts I, III and V on the grounds that plaintiffs had failed to exhaust administrative remedies provided for in the contract; that with respect to the theory of tortious interference with contract the notice required by sections 8—101 and 8—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 8—101, 8—103) had not been served; and that counts I and III allege more than one cause of action in each count in violation of section 33(2) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 33(2)). The District also maintained that no action for a breach of contract could be asserted because plaintiffs had not alleged that the work was completed in accordance with the contract and because plaintiffs by contract had agreed not to make any claim for damages for delay. NSSD also asserted that it had no contract with the Subcontractors and thus could not be held to breach of contract as to them. As to count V, NSSD alleged that plaintiffs sought to establish a lien on public funds without statutory notice and that there was no statutory authority for the District to pay interest of that kind. The trial court entered an order dismissing all three counts with prejudice, from which the plaintiffs have appealed.

■■ Preliminarily, we conclude that several of the grounds for dismissal of counts I and III urged by the NSSD are not meritorious. The fact that the Contractor did not allege that NSSD accepted or certified the work pursuant to the contract is not a necessary allegation to support a claim of breach of contract; it is sufficient that plaintiffs allege, as they have, that they have fully performed their obligations under the contract. Any other interpretation would have the untenable result that the owner could prevent any contractor from ever seeking relief, no matter how meritorious, if the owner failed to provide the formal acceptance.

■■ The NSSD's claim that the plaintiffs are precluded because of their failure to exhaust administrative remedies is without merit. The contractual provision that the board of NSSD shall determine all questions relating to the contract is obviously not an administrative remedy in the ordinary sense in which a party claims to have been aggrieved by an administrative action. Even if it were so considered, the exhaustion doctrine presupposes that there is an effective administrative remedy which will resolve plaintiff's problem. *Strom International, Ltd., v. Spar Warehouse & Distributors, Inc.* (1979), 69 Ill. App. 3d 696, 700.

■■ We do find merit in the claim of NSSD that it is improper to plead the claims of the Subcontractor in counts I and III since they stand in a different relation to the District than the Contractor. As a general rule subcontractors cannot recover against the owner in the absence of a contractual arrangement and in the absence of any allegation that they are third-party beneficiaries under the principal contract; their sole remedy is

under the Mechanics Lien Act. (*Hill Behan Lumber Co. v. Marchese* (1971), 1 Ill. App. 3d 789, 792.) These conditions have not been satisfied in the pleadings before us.

■■■ We also conclude that the allegations in count III that defendant "preempted the contractual relationship between the Contractor and Westinghouse" introduce an action based on tort rather than on contract and thus were improperly included in the same count as the contract action. (Ill. Rev. Stat. 1979, ch. 110, par. 33(2).) However, the allegations do not in fact state a claim for tortious or negligent interference with contract in the absence of the allegation of sufficient facts to show that defendant intentionally and maliciously induced the breach of plaintiff's contract. (*Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 744.) The particular allegations may thus be considered surplusage.

If the Subcontractors' action and the preemption of contract issue are excluded from the pleading no serious claim of multifariousness would exist.

We do, however, agree with the conclusion of the trial court that counts I and III of the complaint fail to state causes of action against NSSD.

As to counts I and III, we adhere to the general principle that absent a contract provision a contractor can recover damages for acts or omissions of the owner which burden the performance of the work and increase the costs of completion. (*Consumers Construction Co. v. County of Cook* (1971), 1 Ill. App. 3d 1087, 1094. See also Annot., 74 A.L.R.3d 187, 200 (1976).) Further, we also adhere to the general principle that an owner impliedly warrants that the plans and specifications it furnishes for the job will enable the contractor to successfully do the work; and that if the "plans are faulty thereby requiring the contractor to incur additional costs, the [owner] must reimburse the contractor for damages incurred because of the breach of implied warranty * * * ." (*W. H. Lyman Constr. Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 37).) However, we agree with the District that under the circumstances its contractual provisions, providing essentially that there shall be no damages for delay, preclude the action based on the contract.

While the Contractor has carefully limited its allegation of damages by disclaiming that it is seeking damages for delay we must conclude that the claims it makes are, in fact, for delay and are encompassed within the exculpatory clause in the contract.

The clause states:

> "The Contractor agrees to make no claim for damages for delay in the performance of this Contract occasioned by any act or omission to act of the District or any of its representatives, * * * and agrees that any subject claim shall be fully compensated for by

an extension of time to complete the performance of the work as provided herein."

■■ The Contractor in its pleading seeks to recover for cost overrun, excessive labor costs, labor "add-ons," excessive supervision, winter protection of the work, increased overhead, bond and insurance costs, interest or money borrowed and expended and the loss of anticipated profit. However, these claims are premised on the pleading that plaintiffs were required by the fault of the defendant to perform their work out of sequence, thus ineffectively and less productively. In our view this claim of damages is excluded by the no-damages-for-delay clause.

In *Lichter v. Mellon-Stuart Co.* (W.D. Pa. 1961), 193 F. Supp. 216, *aff'd* (3d Cir. 1962), 305 F.2d 216, the plaintiff also argued that the defendant breached the contract by directing plaintiff to perform work out of sequence and that damages caused by the breach were not excluded by a no-damage-for-delay clause. The District Court noted that the acts of the general contractor required the subcontractor to perform the masonry work over a longer period of time than if it had been performed in sequence and increased its cost considerably, but that this was contemplated by the contracts and the time of performance duly extended under the contract. The District Court thus found that the damages sought were due to delay and denied recovery. 193 F. Supp. 216, 221.

There are a number of exceptions which the courts have enunciated in construing a no delay damages clause. Where the contractee is not acting in good faith, the delay is unreasonable in duration, the cause for the delay is not within the contemplation of the parties, or delay is attributable to inexcusable ignorance or incompetence of the engineer, such clauses have been held inapplicable. (See generally Annot., 74 A.L.R.3d 187 (1976).) However, the plaintiffs do not plead the exceptions and specifically disclaim any delay damages. They have argued in fact that the clause only applies to a complete suspension of the work. However, no authority is cited in support of this distinction. The cases collected in Annot. 74 A.L.R.3d, 187-264 (1976) illustrate the wide variety of causes for delay other than suspension of the work to which such clauses have been found applicable. (See, *e.g.*, *Ericksen v. Edmonds School Dist. No. 15* (1942), 13 Wash. 2d 398, 125 P.2d 275.) In *Ericksen*, a similar clause was held to preclude damages for failure of the supervising engineer to make corrections in the plans and specifications in a timely fashion which allegedly retarded the progress and performance of the work in its proper order and sequence. The court noted that the probability of the occurrence of delays was clearly foreseen by the parties when they specifically provided that the Contractors' remedy for such delay should take the form of an extension of time. In *Ericksen*, the court also quoted with approval from *Goss v. Northern Pacific Hospital Association* (1908), 50

Wash. 236, 96 P. 1078, in which the withdrawal from the jury of questions of delay because of the no-damage-for-delay clause in the contract was upheld. 13 Wash. 2d 398, 411, 125 P.2d 275, 275, 280-81.

We further conclude that count V does not state a cause of action against the NSSD. In effect, the claim is for prejudgment interest and wholly depends upon an eventual judgment on the contract against the District. Since we have dismissed the complaint against the District we do not reach the question of the authority to pay interest which may be imposed by law for breach of contract.

For these reasons, we find that the trial court properly dismissed the complaint against the NSSD.

## II
## THE CASE AGAINST GREELEY & HANSEN

In counts II and IV the plaintiffs seek damages against the Engineers based on their alleged negligence. In count II the plaintiffs adopt the allegations in count I (against NSSD) and state that the Engineers were guilty of negligence in designing the electrical switchgear, in failing to cure the design defects, in failing to provide electrical service to the job in timely manner and in carelessly "preempting the contractual relationship between plaintiffs and its supplier Westinghouse Electric Co." because of the necessary redesign of the switchgear. Plaintiffs allege damages as a proximate result of this negligence in similar terms to those alleged against the Contractor in counts I and III, again "exclusive of delay damages."

Count IV is essentially the same as count II with the additional allegations that the Engineers negligently administered their duties under the construction contract with the result that the Contractor was denied access to a material portion of the work and the sequence of its work was disrupted and burdened. The same consequences are alleged as set forth in counts I, II and III.

In dismissing these counts against the Engineers the trial court concluded that the Engineers owed no duty to the Contractor as a matter of law. We cannot agree. We have recently held that an engineer owes the contractor a duty of care in the design and administration of the project. *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 40. See also *Normoyle-Berg Associates, Inc. v. Village of Deer Creek* (1976), 39 Ill. App. 3d 744, 746; *E. C. Ernst, Inc. v. Manhattan Construction Co.* (5th Cir. 1977), 551 F.2d 1026, 1041. See generally Annot., 65 A.L.R.3d 249, 256-59 (1975).

The Engineers do not directly dispute the general proposition that an architect or engineer may have a duty towards the Contractor under some circumstances, but deny that there was a duty based on the pleading

before us. They contend that the contract with the District evinced the intention that the Contractor would undertake the risk of any delay in the performance of any work, that this is supported by the nature of large construction projects in which such matters are considered in the bidding process; that the contract thus defines the scope of the Engineers' duties, and that if there is a duty owed outside of the contract based on tort the duty cannot support a claim for the economic damages which are alleged. The Contractor, in addition to disputing these arguments, also contends that the Engineers in their motion to dismiss failed to urge these specific defenses and have thereby waived them.

■■ First, we conclude that the issues have not been waived inasmuch as they relate purely to questions of law which are inherent in the finding of the trial court that the Engineers had no duty owed to the Contractor.

We also conclude that the Contractor has not stated a cause of action for intentional interference with the contract with Westinghouse Electric Co. for the same reasons we have outlined in dealing with the claim with reference to counts I and III involving the NSSD.

We cannot agree, however, that the pleadings show that the Engineers had no duty to the Contractor as a matter of law. To so conclude would conflict with the Illinois cases as well as a majority of cases in other jurisdictions which have held that a duty runs from the architect or engineer who engages in tortious action which hinders and damages the Contractor. The scope of that duty, although based upon tort rather than contract, is nevertheless defined by the architect and engineers' contract with the owner. (See, *e.g.*, *Mississippi Meadows, Inc. v. Hodson* (1973), 13 Ill. App. 3d 24, 26. See also *Davidson & Jones, Inc. v. County of New Hanover* (1979), 41 N.C. App. 661, 667, 255 S.E.2d 580, 584.) Further, it should be noted that the Engineer, unlike the District, does not warrant the accuracy of the plans and specifications, but only has the duty toward the Contractor to design the plans and specifications with reasonable care. See, *e.g.*, *W. H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 39-40.

Here, the Engineers note that the tortious acts charged against them arise from the alleged duty to furnish electrical power within a specified time, and from the corresponding duty to refrain from negligence in designing the electrical switchgear upon which the distribution of electrical power apparently depended. They argue, however, that the general Contractor, by its agreement with the owner, had the duty to place the electrical distribution system into operation within the time period and also had the duty to furnish, test and install the electrical equipment. While this may, if proved, be a defense on the merits, it does not show, as a matter of law, that the Engineers were free of negligence which proximately caused damaged to the Contractor.

The Engineers' further argument that the complaint fails to state a cause of action because it claims economic damages is also not persuasive. The contention is based upon our opinion in *Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194, 203, holding that a products liability action will not lie to recover purely economic loss. *Koplin* involves products liability, and its reasoning has not been applied in design malpractice cases. See, *e.g., Lyman*, 84 Ill. App. 3d 28, 39; *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 63.

Nor do we agree with the claim of the Engineers that the no-damage-for-delay clause in the contract between the Contractor and the District also protects them against delay damages as a matter of law. They may, however, at trial be permitted to show that certain delays were within the contemplation of the contract or were caused by factors other than the alleged negligence of the Engineers.

We therefore affirm that portion of the judgment of the trial court which dismissed action against the District, both on behalf on the Contractor and the Subcontractors. We reverse that portion which dismissed the counts against the Engineers and remand the cause for further proceedings pursuant to this opinion.

Affirmed in part, reversed and remanded in part.

NASH and UNVERZAGT, JJ., concur.


SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

In their petition for rehearing, plaintiffs assert that count V should not have been dismissed, since in that count they were seeking funds withheld on the contract by NSSD as well as interest on the retained funds. They maintain that they did state a claim in count V for monies due and owing on the contract with NSSD.

Count V is confusing for a number of reasons, including the fact that it seeks an equitable remedy, constructive trust, for an action at law clearly compensable in money damages. Also, in the prayer for relief to count V, plaintiffs sought only the imposition of a constructive trust on the *earnings* on the money retained and did not specifically pray for damages in the amount of the money withheld.

■■ However, the NSSD has not disputed the fact that it has withheld payment under the contract and has asserted only that interest may not be recovered on the retainages. In the interest of fairness and the advancement of this litigation, we will consider count V as a claim for the amount

withheld under the contract as well as a claim for interest on that amount. So viewed, count V does state a claim for the retainage upon which relief can be granted, and to that extent should not have been dismissed. NSSD is, of course, free to file an answer denying any allegations therein or otherwise defending against the claim. At this stage of the litigation, we express no view on the issue of whether interest can ultimately be recovered by plaintiffs. If they are successful in obtaining a judgment against NSSD for the retainage the trial court can then decide whether prejudgment interest is available in light of the applicable provisions of the Interest Act (Ill. Rev. Stat. 1979, ch. 74).

Thus the opinion is modified to the extent that the portion of the judgment dismissing count V, brought solely against NSSD, is reversed as to the claim for the retainage. The disposition of counts I—IV remains unchanged.

NASH and UNVERZAGT, JJ., concur.