(No. 79-CC-114█ 

McNEILL ASPHALT Co., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 26, 1984.*

DAVID B. DALEY, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

McNeill Asphalt Co., Claimant herein, seeks to recover $54,031.90, which it alleges is due pursuant to a contract between Claimant, as general contractor, and the Department of Transportation of Illinois, for construction of an airport runway extension at the Kewanee Municipal Airport at Kewanee, Illinois. For the purpose of earth excavation and embankment and attendant dirt removal, the general contractor employed Strunk Brothers Company as subcontractor.

Following the completion of the project, the State paid the general contractor (Claimant) the entire remaining balance, known and admitted by the State to be due under the contract. After such final payment was made, the subcontractor filed a mechanic's lien. Upon ascertaining that all the funds to which its lien could attach had been disbursed, the subcontractor filed suit against the Claimant in the circuit court of the Fourteenth

Judicial Circuit of Henry County, general division, case No. 78-C-13, for moneys alleged to be due based upon additional cubic yards of dirt excavated and carted by it and elevation surveys and plans submitted to it.

The contractor and subcontractor thereupon entered into a stipulation voluntarily dismissing the contractor in return for an assignment of a claim the contractor may have against the State. The assignment provided that in consideration of the aforesaid release, the contractor would undertake to actively pursue a suit against the State and any recovery thereon would accrue entirely to the subcontractor, with the condition that failure of any recovery would not affect the forgiveness of the claim that the subcontractor may have against the contractor, their account being settled between them on the basis of said assignment.

The net effect of the aforesaid assignment is that this claim before this Court is one exclusively of the subcontractor, Strunk Brothers Company, even though ostensibly pleaded by the general contractor. The Illinois appellate court, in *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1981), 92 Ill. App. 3d 90, 414 N.E.2d 1274, held that it was improper for a general contractor to plead the claim of a subcontractor since the subcontractor stood in a different relation to the State than the contractor, and further stated that the subcontractor's sole remedy is under the Mechanics' Lien Act.

Although admitting that the subcontractor has an interest in this claim, Claimant contends that this suit is based upon its own claim. This is contrary to the facts. The assignment executed by the Claimant transferred all of its right, title and interest in the claim, if any, to the subcontractor, and Claimant no longer has any rights in

the property assigned. *(People v. Wurster* (1981), 97 Ill. App. 3d 104, 422 N.E.2d 650; *Stavros v. Karkomi* (1976), 39 Ill. App. 3d 133, 349 N.E.2d 599.

Inasmuch as there is no contractual relationship between the subcontractor and the State, the subcontractor has no standing to sue in its own name. (*Weiland Tool & Manufacturing Co. v. Whitney* (1963), 40 Ill. App. 2d 70, 188 N.E.2d 756.) The Illinois Mechanics' Lien Act has adequately preserved the rights of the subcontractor (Ill. Rev. Stat., ch. 82, par. 23) by providing the method of filing liens against the owner. *Hill Behan Lumber Co. v. Marchese* (1971), 1 Ill. App. 3d 789, 275 N.E.2d 451, a case in point, held:

"Our research reveals that the *sole* (emphasis added) remedy of sub-contractors against the owner of the premises is with the Mechanics' Lien Act." (Citing *Traubco Food v. United Auto Workers* (1970), 123 Ill. App. 2d 106, 258 N.E.2d 817; *Vanderlaan v. Berry Construction Co.* (1970), 119 Ill. App. 2d 142, 255 N.E.2d 615; *Sudarth v. Rosen* (1967), 81 Ill. App. 2d 136, 224 N.E.2d 602.

The opinion of this Court in the case of *R. D. Lawrence Construction Co. v. State* (1982), 35 Ill. Ct. Cl. 709, is further determinative of the issue herein. In *Lawrence*, the general contractor filed suit in this Court on its own behalf for a stated amount and for an additional amount on behalf of its subcontractor. This Court awarded the general contractor the amount of its own claim, but denied the amount claimed on behalf of the subcontractor. In the instant case at bar, the subcontractor failed to perfect its statutory lien and this Court cannot provide it greater rights than as provided by statute.

The Claimant finally contends that the claim herein comes within sections 8(a) and (b) of the Court of Claims Act and its provisions. (Ill. Rev. Stat., ch. 37, pars. 439.8(a), (b).) The contention is untenable. It is not

a claim against the State, as discussed *supra*, since it is in reality a claim against the funds held for a contractor, and can only be enforced by a subcontractor in the manner provided for under the Mechanics' Lien Act. Neither is this claim one founded upon any contract as none exists in the case at bar.

As for the merits of the claim, although it is unnecessary for us to rule on, we make the following observations.

The claim of $54,031.90 is based upon conflicting testimony governing the amount of dirt "cut and carted to the embankment area" of a runway extension of the project. The general practice in determining the quantity of dirt hauled is by taking surveys of the elevation of the area involved before and after construction. As per the testimony of various witnesses, condemnation proceedings caused the owner of the land to prohibit entry upon the land. The chief engineer of the State in charge of the project made an aerial survey before construction began. According to his testimony, because he believed aerial surveys are sometimes off one foot he arbitrarily proceeded to lower the aerial survey one foot and submitted plans to the contractor on such basis.

Subsequently, when entry was permitted on the land, the field crews and field men of the State advised the chief engineer that the actual elevations were practically equal to the original aerial survey and did not warrant his lowering the elevation the one foot. He then phoned a Mr. Brown, engineer and president of the subcontractor performing the excavation and carting, at his home and advised him to pay no attention to the original plans, but that there were stakes placed in the cut area showing the correct elevations and to be so

governed. Mr. Brown denied having received the phone call, even though the chief engineer submitted the phone bill showing that a call had been made to Brown's residence in the evening of the day stated.

The dispute as to the amount of dirt hauled appears to revolve around the veracity of the testimony as to whether the subcontractor had been notified as to the change in the specifications. Whether there was notice or whether proper notes were made in the diary of the engineer, or when or by whom, we feel, has no bearing on the quantity of dirt actually cut and removed. The field men, in their staking of the area, indicated the area elevation which governed the amount of dirt to be excavated and embanked. It was upon such elevations of the field men and crew of the State that the State did pay the general contractor the contract price of $1.30 per cubic yard of dirt so hauled and there should be no further payment due from the State for same.

Claim denied.